SOL LUIS DESCARTES, TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; SUCESIÓN DE J. SERRALLÉS, interventora. EL MISMO, peticionario, *v.* EL MISMO, demandado; DESTILERÍA SERRALLÉS, INC., interventora. EL MISMO, peticionario, *v.* EL MISMO, demandado; SUCESIÓN DE J. SERRALLÉS, interventora.

Núms. 237, 239 y 240.—*Sometidos:* Mayo 11, 1950.
*Resueltos:* Mayo 26, 1950.

*Hon. Procurador General Vicente Géigel Polanco y J. A. García Malpica, Procurador General Auxiliar, abogados del peticionario; Vicente Zayas Pizarro, abogado de las interventoras.*

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Debido a la similitud que guardan entre sí, los tres casos del epígrafe fueron vistos conjuntamente ante este Tribunal. En el primero, la Sucesión J. Serrallés importó en 16 de mayo

de 1946 una bobina (*coil*) para el arrancador magnético del motor eléctrico de una sierra eléctrica, que está instalada y se utiliza en el taller de carpintería de la planta industrial de la querellante. En el segundo, la Destilería Serrallés, Inc., importó en 29 de enero de 1946 un conductor de cajas (*conveyor*) que está instalado y se utiliza en un almacén por ella destinado al producto terminado y listo para la venta; y en el tercero, la Sucesión J. Serrallés importó en octubre de 1946 un taladro radial eléctrico y un torno vertical eléctrico, que están instalados en el taller de reparaciones de su planta industrial. La cuestión a ser determinada en todos ellos es si los aparatos antes mencionados están sujetos al pago de arbitrios, a tenor de lo dispuesto por la sección 16 de la Ley 85 de agosto 20 de 1925 (págs. 585, 591), según ha sido enmendada, o si de conformidad con lo provisto por la sección 16-B de la referida ley, conforme la misma fué adicionada a la Ley de Rentas Internas por la Ley 77 de 9 de mayo de 1944 (págs. 167, 169), tales aparatos están exentos del pago de arbitrios, por ser esenciales para el establecimiento y funcionamiento de plantas industriales.

Poco después de efectuadas las importaciones,[1] el Tesorero de Puerto Rico requirió a las interventoras el pago de los arbitrios sobre los indicados aparatos, pero creyendo éstas que los mismos estaban exentos, pagaron bajo protesta[2] y acudieron al Tribunal de Contribuciones. Éste, luego de oír a las partes, dictó sendas resoluciones declarando que tanto la bobina (*coil*) como el conductor (*conveyor*) y el taladro radial eléctrico y el torno vertical eléctrico estaban exentos en armonía con la sección 16-B de la ley.

■ En el caso de la bobina dicho tribunal concluyó que de acuerdo con la prueba ofrecida, dicha bobina se utiliza

---

[1] Véase la sección 39 de la Ley 85 de 1925, según ha sido enmendada.

[1] Véase la Ley 8 de 1927 (pág. 123), según fué enmendada por la núm. 17 de 21 de noviembre de 1941 (pág. 55, Ses. Ext.), así como la Ley 229 de 10 de mayo de 1949 (pág. 705).

mediante inducción electromagnética para completar un circuito por el cual pasa la corriente necesaria para el funcionamiento de un motor que hace mover una sierra; y que tal bobina da potencia para facilitar el cierre del interruptor de arranque que completa el circuito; que la referida sierra, que es circular y ajustable para girar en planos de distintos ángulos con el horizontal, es parte de la maquinaria usada en la carpintería de la Central Mercedita; que con ella se cortan piezas que se emplean, entre otras cosas, para modelos de madera que posteriormente se usan para fundir piezas de hierro y reparar máquinas y aparatos de la compañía y trozos de madera utilizados en cualquier trabajo de carpintería de la central; y que de no usarse la sierra habría que serrar la madera a mano, lo que requeriría más tiempo y sería más costoso.

En relación con el conductor, el Tribunal de Contribuciones concluyó que el mismo se usa exclusivamente dentro del establecimiento industrial de la interventora Destilería Serrallés, Inc. en todas aquellas ocasiones en que hay necesidad de trasladar botellas vacías al sitio en donde se les llena con alcohol o ron o cuando hay necesidad de llevarlas llenas a los almacenes, y para sacarlas de éstos y entregarlas en los portones del almacén a los camiones dedicados a su transportación fuera del establecimiento; que la interventora ha fabricado en algunos años hasta 800,000 cajas de ron; que de eliminarse dicho conductor la labor que se realiza en el establecimiento de la interventora se haría más difícil y que de no usarse el conductor para los fines indicados el ritmo de producción en la industria de la corporación sufriría grandemente.

Y respecto al taladro radial eléctrico y al torno vertical eléctrico, el tribunal recurrido concluyó, en cuanto al primero, que el mismo consta de una columna vertical de acero provista con brazo horizontal que lleva un cabezote que soporta barrenas para hacer taladros; que el mismo es movido por motor eléctrico y se le utiliza para hacer perforaciones desde media

pulgada hasta dos y media pulgadas de diámetro, en cualquier pieza o artículos de la fábrica; que el taladro se usa diariamente, utilizándose mucho más durante la época en que no se muele la caña y en que hay que reparar la maquinaria de la central; y que el torno vertical consta de una plataforma horizontal redonda de 42 pulgadas de diámetro que sostiene, mientras gira alrededor de su eje, cualquier pieza que ha de ser plasmada o cortada circularmente por la cuchilla o herramienta cortante que se le aplique; y que se usa para tornear cualquier pieza o objeto como, por ejemplo, una chumacera.

A requerimiento del Tesorero expedimos un auto de *certiorari* para revisar en cada uno de los casos la resolución dictada por el Tribunal de Contribuciones, siendo la contención principal del peticionario que dicho tribunal aplicó erróneamente la sección 16-B de la Ley de Rentas Internas. Ésta, en lo pertinente, provee que:

"Estarán exentos del pago de los arbitrios impuestos por esta Ley toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales."

En *Caparra Dairy* v. *Tribunal de Contribuciones*, 67 D.P.R. 314, interpretando la anterior sección, definimos qué se entendía, a los fines de la misma, por maquinaria, aparato o equipo, y a nuestro juicio los artefactos aquí envueltos están comprendidos en las definiciones que de esas palabras se dieron en dicho caso. Lo procedente ahora es, pues, resolver si los mismos son esenciales para el establecimiento y funcionamiento de las plantas industriales de las interventoras.

▬ Al argumentar los tres casos, sin embargo, el peticionario sostiene que de acuerdo con el artículo 4 (*d*) del Reglamento núm. 52 promulgado por el Tesorero de Puerto Rico en 22 de agosto de 1944, de conformidad con lo dispuesto en la sección 16-B, la esencialidad de cualquier maquinaria, aparato o equipo debe entenderse en relación al equipo fabril esencialmente productivo de la industria, mas no en relación

con la industria en todas sus fases económicas. (³). Nada dispone, sin embargo, la sección 16-B misma respecto a que para que cualquier maquinaria, aparato o equipo. que sea esencial para el establecimiento y funcionamiento de plantas industriales estén exentos del pago de arbitrios los mismos deberán tener relación con el equipo fabril de la industria. Cierto es que la ameritada sección 16-B fué enmendada por la Ley 436 de 14 de mayo de 1947 (pág. 909) y que según esta ley enmendatoria la exención es aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial. (⁴) También es verdad que la tantas veces mencionada sección 16-B fué enmendada asimismo por la Ley 195 de 7 de mayo de 1949 (pág. 615) y que en el segundo *Disponiéndose* de la misma se hizo constar de nuevo que la exención se entendería aplicable sólo a la maquinaria de la fase fabril productiva

(³) El artículo 4 (*d*) del Reglamento 52, supra, reza así:

"La esencialidad debe entenderse en relación al 'establecimiento' (según se explica esta palabra en el párrafo precedente) y el funcionamiento de aquella maquinaria, aparato o equipo que se use directamente en la transformación gradual del producto en las industrias de procesos continuos (Art. 4 (*a*) (1) supra), bien analíticas o sintéticas; o aquélla que se use directamente en la fabricación e instalación de los aditamentos a productos terminados (Art. 4 (*a*) (2) supra) ; o aquélla que se use en la fabricación de distintos componentes que finalmente se arman o combinan entre sí para constituir un producto terminado preservando los componentes su identidad estructural individual; o en la fabricación de componentes que finalmente se funden en un producto distinto, perdiendo dicha identidad.

"*La esencialidad debe entenderse, pues, en relación al equipo fabril esencialmente productivo de la industria, no en relación con la industria en todas sus faces económicas.*" (Bastardillas nuestras.)

(⁴) La sección 16-B, según fué enmendada por la Ley 436 de 1947 provee en su penúltimo *Disponiéndose:*

"*Disponiéndose,* finalmente, que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento y funcionamiento de plantas industriales, *deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación, incluyendo envase y rotulación del producto; pero no amparará la maquinaria, aparatos, equipo, ni vehículos empleados en la fase administrativa o comercial de la industria;* . . ." (Bastardillas nuestras.)

del proceso industrial.(⁵)   Pero a estos casos no les son aplicables ni la enmienda de 1947 ni la de 1949, toda vez que en materia contributiva debe aplicarse la ley vigente para la fecha en que surge la responsabilidad contributiva.   Como los aparatos aquí envueltos fueron introducidos a esta Isla en 1946, cuando regía la sección 16-B según fué adicionada a la Ley de Rentas Internas por la 77 de 1944, a ella debemos acudir para determinar si los aparatos en cuestión deben o no disfrutar de la exención a que la misma alude.   Como ya hemos visto, la sección 16-B según rezaba en 1944 no hace mención alguna de la fase fabril de una industria.   Ella claramente exime del pago de los arbitrios toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales.   Fué el Reglamento 52 el que, repetimos, hizo constar que la esencialidad debía entenderse en relación con el equipo fabril esencialmente productivo de la industria.   Si bien la ameritada sección 16-B autoriza al Tesorero de Puerto Rico a dictar los reglamentos que fueren necesarios para dar cumplimiento a las disposiciones de dicha sección, sin embargo, un reglamento para que sea válido debe estar en armonía con la ley que autoriza su promulgación, careciendo de validez, por el contrario, si está en pugna con la misma.   *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 275; *Buscaglia* v. *Tribunal, Crown Beverages, Int.*, 67 D.P.R. 57, 65; *Manhattan Co.* v. *Commissioner*, 297

---

(⁵) El segundo *Disponiéndose* de la Ley 195 de 1949 reza así:

"*Disponiéndose*, finalmente, asimismo, que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento de plantas industriales, *deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación*, pero incluyendo además la maquinaria, camiones o montacargas (*hoisting units*) que se utilicen exclusiva y permanentemente en la conducción de materia prima y artículos semi–elaborados dentro del circuito (*premises*) de la planta industrial así como el equipo que se emplee en el envase, rotulación del producto y en la preservación de éste o de la materia prima en caso de artículos perecederos; pero no amparará la maquinaria, aparatos, equipo, ni vehículos empleados en la fase administrativa, distributiva o comercial de la industria." (Bastardillas nuestras.)

U.S. 129, 134. Como la sección 16-B no dice en forma alguna que para que una maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales pueda disfrutar de la exención deberá formar parte del equipo fabril de la industria, el artículo 4 (d) del Reglamento 52, según fué aprobado en 22 de agosto de 1944, fué más allá de lo requerido por la ley que autorizó su promulgación y resulta, por ende, nulo y sin valor alguno en tanto en cuanto ha de aplicarse a situaciones surgidas bajo la Ley 77 de 1944.

■ La sección 16-B, según hemos visto, fué enmendada por las leyes de 1947 y 1949 ya citadas. Como en éstas se dice que por tratarse de una exención que ampara la maquinaria esencial para el establecimiento y funcionamiento de plantas industriales, tal exención deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial, el Tesorero sostiene que el espíritu del legislador fué siempre conceder la exención única y exclusivamente a los aparatos, maquinaria o equipo esenciales para el establecimiento y funcionamiento de plantas industriales en su fase fabril. No estamos de acuerdo. La ley de 1944 contiene un lenguaje tan claro y abarcador que demuestra a todas luces que el propósito legislativo fué eximir del pago de arbitrios toda maquinaria, aparato o equipo esencial para el establecimiento y funcionamiento de plantas industriales. Las enmiendas de 1947 y 1949, lejos de convencernos de que al aprobarse la sección 16-B en 1944 el propósito fué eximir tales aparatos, maquinaria o equipo siempre que se usaran en la fase fabril de una industria, nos reafirman en la conclusión de que por la ley original de 1944 no se requería que los aparatos, maquinaria o equipo se utilizaran en relación con la fase fabril de una industria y que fué precisamente a virtud de un cambio posterior de criterio, enunciado por las referidas enmiendas, que la Asamblea Legislativa creyó que para poderse disfrutar de tal exención debía exigirse que los mismos se utilizaran en la fase fabril de la industria.

Según se dice en Crawford, *Statutory Construction, Interpretation of Laws*, a la página 618, sec. 304, "En verdad, el mero hecho de que la Asamblea Legislativa apruebe una enmienda es de por sí indicativo de la intención, por regla general, de alterar la ley preexistente." Véase también Sutherland, *Statutory Construction*, Vol. 1, tercera edición, página 412, sec. 1930. Las enmiendas de 1947 y 1949 no revelan otra cosa que el propósito de restringir la exención.

Por otra parte, el Tesorero arguye igualmente que tratándose de una exención contributiva la misma debe ser interpretada restrictivamente. Estamos de acuerdo con tal aserto. Véanse *National Hats Co.* v. *Sancho*, 65 D.P.R. 241; *Buscaglia, Tes.* v. *Tribunal Contribuciones; Sindicatura Rubert Hnos., Int.*, 68 D.P.R. 37, y *Central Coloso* v. *Tribl. Contribuciones*, 70 D.P.R. 65. Empero, esa doctrina no es aplicable cuando la intención y propósito legislativos son, como ocurre aquí, claros e inequívocos. *Buscaglia* v. *Tribunal, Crown Beverages, Interventora*, supra.

Al igual que opinó el Tribunal de Contribuciones creemos que la bobina, el conductor, el taladro radial eléctrico y el torno vertical constituyen maquinaria, aparato o equipo esenciales para el funcionamiento de las plantas industriales de las aquí interventoras. La bobina, el taladro y el torno son esenciales, tal vez indispensables, en los talleres de reparaciones de las mismas, pues sin ellos el funcionamiento y la producción de las industrias de éstas sufrirían graves perjuicios. Además, el conductor también es esencial al funcionamiento de la destilería, ya que el mismo contribuye grandemente a acelerar el ritmo de producción de ésta, y sin su uso ella difícilmente podría atender eficientemente el envase, almacenaje y despacho de sus productos.

Nada de lo antes expuesto milita en contra de lo resuelto en *Central Coloso* v. *Tribunal de Contribuciones*, supra. En él decidimos que el equipo usado por una planta industrial para transportar materia prima a la planta no se considera como equipo esencial para el establecimiento y funciona-

miento de una planta industrial y por consiguiente que tal equipo no caía bajo la exención.

*Deben confirmarse las resoluciones recurridas.*

El Juez Asociado Sr. Snyder no intervino.

El Juez Asociado Sr. Negrón Fernández se inhibió.