EFRAÍN RIVERA MALDONADO, demandante–recurrido y recurrente, *v.* AUTORIDAD SOBRE HOGARES DE PUERTO RICO ET AL., demandados-recurrentes y recurridos.

*Número:* 12528 *Resuelto:* 26 de febrero de 1963

454

Efraín Rivera Maldonado, *pro se.* *Hiram R. Cancio, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar, Edgar S. Belaval, Procurador Auxiliar,* y *Alfonso L. García Martínez, Procurador Auxiliar,* abogados de los demandados–recurrentes y recurridos.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

La Sec. 28 de la Ley de Personal, Ley Núm. 345 de 12 de mayo de 1947 (3 L.P.R.A. sec. 668), dispone que:

"Todos los empleados en el Servicio por Oposición y en el Servicio sin Oposición excepto los de emergencia, tendrán dere-

cho a licencia y vacaciones a razón de dos días y medio por cada mes de servicio y a licencia por enfermedad a razón de un día y medio por cada mes de servicio, excluyendo en ambos casos los domingos y días de fiesta legal. La autoridad nominadora de acuerdo con los empleados determinará la fecha en que éstos disfrutarán de sus vacaciones anuales dentro del transcurso de cada año, en la forma que fuere más compatible con las necesidades del servicio; Disponiéndose, que cada empleado tendrá derecho a disfrutar de dichas vacaciones durante un período de no menos de quince (15) días consecutivos.

"Las reglas prescribirán las horas de trabajo, los días feriados, la asistencia y las licencias por vacaciones y enfermedad y las licencias especiales por causa justificada, con paga o sin paga, según fuere el caso."

El Reglamento de Personal aprobado con fecha 9 de septiembre de 1952 por la autoridad concedida en la sección transcrita—3 R.&R.P.R. sec. 647–114—en sus incisos (b) y (c) dispone lo siguiente:

"(b) Los empleados que dejen de tomar la licencia de vacaciones concedida por la Ley podrán acumular la misma hasta un máximo de sesenta (60) días laborables al finalizar cualquier año natural.

"(c) Las autoridades nominadoras podrán conceder licencia de vacaciones en exceso de treinta (30) días laborables en cualquier año natural a aquellos empleados que tengan licencia acumulada, según lo dispuesto en el inciso anterior. La licencia de vacaciones, sin embargo, no podrá exceder de sesenta (60) días laborables en cualquier año natural."

El demandante en la presente acción prestó servicios por más de cinco años a la demandada, agencia del Estado Libre Asociado. El 15 de julio de 1955 comenzó a disfrutar de las vacaciones que tenía acumuladas al final de las cuales cesaría en las funciones de su cargo. A julio 15 tenía acumulados 63½ días, a razón de 2½ días por cada mes de servicio. Sólo se le concedieron 55 días ya que durante el año 1955 había disfrutado de 5 días de licencia. El demandante alega que tiene derecho a disfrutar de los 8½ días en

exceso de la licencia concedida. Sostiene además, que procede se le acrediten vacaciones por los días de licencia que tiene derecho a disfrutar antes de ser efectiva su renuncia.

El tribunal de instancia sostuvo la primera contención del peticionario pero le negó razón en la segunda. Demandante y demandado recurrieron ante nos.

La contención del demandante, con la cual estuvo de acuerdo el juez sentenciador, es al efecto de que la Sec. 28 de la Ley de Personal, antes transcrita, no limita el número de días que un empleado pueda acumular para disfrutar de licencia por vacaciones y que la disposición reglamentaria que los limita a 60 días está en contra de la clara disposición de la ley.

■ Es principio cardinal de hermenéutica el que a las palabras, al lenguaje de una ley, debe dársele la interpretación que valide el propósito que tuvo el legislador al aprobar la medida. Enunciado este principio, pasemos a la consideración de la cuestión planteada.

■ El propósito de la disposición que estudiamos—Sec. 28, Ley de Personal—es concederle al empleado un período de descanso que le ayude a reparar periódicamente las fuerzas que el diario trajín agota, así como brindarle la ocasión de compartir más intensamente con su familia un período razonable de vacaciones anualmente. Es la única oportunidad que tiene para poder gozar de la compañía de su familia durante todo el día por un período razonable. Es un jalón más en la lucha por la emancipación de los asalariados. Es un paso más en la redención que comenzó en Australia a mediados de la centuria pasada cuando James Galloway logró la implantación de la jornada diaria de 8 horas de trabajo. Véase, *Autoridad de Comunicaciones* v. *Tribl. Superior*, 87 D.P.R. 1 (1962).

En la opinión emitida en el caso de *Butler* v. *United States*, 101 Ct. Cl. 641 (1944), se expone el propósito de esta legislación así:

"Como sostuvo esta corte hace ya más de medio siglo, la licencia anual por vacaciones no es una fórmula congresional para aumentar la paga del empleado, sino que es concedida a manera de respiro a los fines de proporcionar una interrupción en las labores que desempeña el empleado para el bienestar común, permitiéndole regresar con nuevos bríos a servir a su país. Según lo expresó el Juez Nott en *Harrison* v. *United States,* 26 Ct. Cls. 259, 269, la licencia anual fué establecida 'para asegurar al empleado un período para su descanso y recuperación.' No fué creada para concederse a manera de bonificación al separarse el empleado del servicio. . ."

Además *Harrison* v. *United States,* 26 Ct. Cl. 259 (1891); *Nicholson* v. *Amar,* 45 P.2d 697 (Calif. 1935); Rodó, *El Mirador de Próspero, El Trabajo Obrero en el Uruguay,* Obras Completas, editadas por Rodríguez Monegal, págs. 637, 643 (Madrid 1957).

Ese, repetimos, es precisamente el propósito de esta legislación, proporcionar un período de descanso anual al empleado. No es la intención legislativa ofrecerle un medio al empleado para que trabaje año tras año sin descanso, para que al cabo de un período largo de servicio pueda tener derecho a disfrutar de unas largas vacaciones. Si eso se permitiera, quedaría destruido el propósito que tuvo el legislador al aprobar la ley: descanso periódico al empleado con la oportunidad de compartir con los suyos durante días enteros un período razonable de vacaciones. Si se permitiera que las vacaciones se acumularan indefinidamente, el empleado al cesar en su cargo podría disfrutar de todas las que hubiera acumulado, con paga, y no habría nada que le impidiera durante ese período comenzar en otro empleo con un patrono particular, sin disfrutar nunca del descanso que la Asamblea Legislativa entiende que debe disfrutar como una cuestión de interés público, ya que en la política establecida por la Asamblea Legislativa para el disfrute de vacaciones no sólo está envuelto el bienestar del empleado y su familia sino el de la comunidad en general. Como expresó *Rodó,* en

el ensayo antes citado: "Sofístico fuera sostener que en el obrero que rinde la vida o la salud al exceso de trabajo no hay comprometido más que un interés individual, al que el Estado debe permanecer ajeno."

■ Teniendo en cuenta el propósito que inspira la legislación que en este caso consideramos, pasemos a examinar la disposición en controversia. Luego de establecer la ley que los empleados "tendrán derecho a licencia y vacaciones a razón de 2½ días por cada mes de servicio" o sea, a 30 días anuales, se dispone que "[l]a autoridad nominadora de acuerdo con los empleados determinará la fecha en que *éstos disfrutarán de sus vacaciones anuales dentro del transcurso de cada año.*" (Énfasis suplido.) Así vemos que la ley expresamente dispone que la autoridad nominadora se pondrá de acuerdo con los empleados para fijar sus vacaciones anuales dentro del transcurso de cada año. Teniendo en cuenta el propósito de la ley, es de importancia significativa el hecho de que el legislador hace referencia al disfrute de vacaciones anuales dentro del transcurso de cada año. Nada hay en este lenguaje que pueda interpretarse como que autoriza al empleado a acumular año tras año las vacaciones que la ley le concede. Por el contrario, del lenguaje usado surge con bastante claridad que el legislador tenía el propósito de que el empleado disfrutara de sus vacaciones cada año. Y ciertamente ésta es la interpretación que es cónsona con el propósito que inspira esta clase de legislación. Es la misma política seguida para la industria privada evidenciada en los decretos de Salario Mínimo promulgados por la Junta de Salario Mínimo cuando ésta estaba autorizada a reglamentar las condiciones de trabajos y que quedaron vigentes por disposición de la Sec. 42(b) de la Ley Núm. 96 de 26 de junio de 1956—29 L.P.R.A. sec. 246k (b) (Supl. 1961) —. Estos decretos disponían que no se podía acumular vacaciones por más de dos años. Decreto Mandatorio Núm. 6, 29 R.&R.P.R. sec. 245n–98(b) ; Decreto Mandatorio Núm. 7, Id. sec.

245n–117(b); Decreto Mandatorio Núm. 8, Id. sec. 245n–138(b); Decreto Mandatorio Núm. 9, Id. sec. 245n–155(a); Decreto Mandatorio Núm. 12, Id. sec. 245n–195(b); Decreto Mandatorio Núm. 13, Id. sec. 245n–214(b); Decreto Mandatorio Núm. 14, Id. sec. 245n–234(a); Decreto Mandatorio Núm. 15, Id. sec. 245n–254; Decreto Mandatorio Núm. 20, Id. sec. 245n–356(b); Decreto Mandatorio Núm. 21, Id. sec. 245n–376(b); Decreto Mandatorio Núm. 22, Id. sec. 245n–398(b); Decreto Mandatorio Núm. 23, Id. sec. 245n–427(b); Decreto Mandatorio Núm. 24, Id. sec. 245n–447(b).

El caso de *Harrison* v. *United States*, supra, presenta una situación similar a la que en éste consideramos. En aquél la ley disponía como sigue:

"Que a los empleados de la Oficina de la Imprenta del Gobierno, ya sean empleados por pieza o de otra forma, les sea concedida una licencia, con paga, que no exceda de treinta días en cualquier año fiscal, luego de cumplir un año de servicio, y sujeta a las reglas y durante las fechas que establezca el Impresor Público. . ."

Se resolvió que esta ley no autorizaba que se acumularan las vacaciones pues se establecía en la misma que el empleado disfrutaría de 30 días de vacaciones en cada año fiscal. Entendió la corte que este lenguaje no autorizaba la acumulación de vacaciones. Obviamente el lenguaje usado por el legislador puertorriqueño es todavía más claro y específico.

Ahora bien, la Asamblea Legislativa delegó en la Junta de Personal creada por la ley, Ley de Personal, Sec. 7—3 L.P.R.A. sec. 647—el poder de reglamentar la concesión de licencias y demás condiciones de trabajo para los empleados del servicio por oposición y del servicio sin oposición disponiendo que: "las reglas prescribirán las horas de trabajo, los días feriados, la asistencia y las licencias por vacaciones y enfermedad y las licencias especiales por causa justificada, con paga o sin paga, según fuere el caso".

Sec. 28, *supra*. El reglamento promulgado por la Junta de Personal, hemos visto, permite el que un empleado acumule hasta 60 días de vacaciones. Si bien es verdad que la ley presupone que el empleado disfrute de sus vacaciones cada año, la reglamentación promulgada no vulnera el propósito que inspirara esta clase de legislación, ya que lo más que podía estar un empleado sin disfrutar de vacaciones sería por un período de dos años pues de lo contrario perdería el derecho a disfrutar de las vacaciones que acumulara en exceso de 60 días.

■ Si hubiere alguna duda sobre la validez de la Reglamentación promulgada por la Junta de Personal, que permite acumular vacaciones cuando la letra de la ley no lo autoriza, cabe señalar, que con posterioridad a la fecha de la promulgación de la reglamentación, la Asamblea Legislativa aprobó la Ley Núm. 12 de 5 de mayo de 1953 y la Ley Núm. 84 de 23 de junio de 1958, enmendatoria de la primera, las cuales podría sostenerse que tuvieron el efecto de sancionar la reglamentación promulgada por la Junta de Personal al establecer que el máximo de licencia transferible es 60 días en el caso de licencia por vacaciones y de 90 días en el caso de licencia por enfermedad. La reglamentación promulgada en cuanto permite la acumulación hasta 60 días puede considerarse más beneficiosa para el empleado, pues le permite una acumulación razonable de vacaciones ofreciéndole así la oportunidad de en ocasiones tener un período más largo de descanso. Por otro lado, la regla no debe ser tan inflexible como para que pueda en ciertas circunstancias perjudicar el servicio público al obligar indefectiblemente a que a todos los empleados se les concedan anualmente vacaciones. Así entendemos que el reglamento no destruye el propósito de la legislación. Está de acuerdo con ésta. La ley y el reglamento deben considerarse al unísono, y así consideradas las dos piezas coadyuvan al propósito legislativo.

Es pertinente dejar consignado que teniendo presente el propósito legislativo al aprobar esta clase de legislación, las autoridades nominadoras deben estar atentas para ofrecer a los empleados la oportunidad de disfrutar de las vacaciones que la ley le concede y que dentro de la necesidad del servicio deben insistir en que éstos disfruten anualmente del período de descanso.

■ Por lo expuesto anteriormente se hace innecesario considerar la segunda cuestión al efecto de si procedía acreditarle vacaciones por los días que el demandante disfrutaría de licencia antes de ser efectiva su renuncia ya que en el supuesto de que así fuera, sería académico el resolverlo pues no podría disfrutarlas ya que serían en exceso de 60 días en un año natural.

*Se revocará la sentencia que dictó el Tribunal Superior, Sala de San Juan, con fecha 16 de mayo de 1958, y se dictará otra con los siguientes pronunciamientos: (a) Habiendo el demandante disfrutado de sesenta días de licencia por vacaciones acumuladas no procede la concesión de la licencia adicional en exceso de los sesenta días disfrutados y (b) Las disposiciones de los Incisos b y c del Reglamento de Personal —9 R.&R.P.R. sec. 647-114—son válidas.*

El Juez Asociado Señor Blanco Lugo concurre en el resultado. El Juez Asociado Señor Santana Becerra disintió en opinión separada en la cual concurren los Jueces Asociados Señores Belaval y Hernández Matos.

Opinión disidente del JUEZ ASOCIADO SEÑOR SANTANA BECERRA en la cual concurren los JUECES ASOCIADOS SEÑORES BELAVAL y HERNÁNDEZ MATOS.

Nada tengo que oponer a las generalizaciones que sirven de fondo a la opinión del Tribunal. No discuto la política pública que inspira la buena norma de conceder vacaciones a los empleados públicos, tanto para beneficio del empleado como para la eficiencia del servicio. Estoy de acuerdo en que la actual legislación contiene una fuerte expresión legis-

lativa al efecto de que las vacaciones deben disfrutarse anualmente, y que al concederse por ley no hubo el propósito de que se acumularan indefinidamente o a capricho o para acomodo del empleado, de modo de disfrutarles luego de una vez o de recibir de una vez un equivalente en dinero. Aparte de que ello destruiría la razón de ser misma del período intermedio de descanso en beneficio de la salud y eficiencia del empleado, dislocaría el servicio público. Eso es obvio.

Pero las controversias justiciables están inexorablemente atadas a un hecho porque la función judicial no se ejerce en abstracto. Y por si se implicare que el caso ante nos es uno de los que niegan esos buenos principios normativos del disfrute de vacaciones, he aquí los hechos:

El demandante ocupó un cargo de abogado en la Autoridad sobre Hogares de Puerto Rico efectivo desde el 18 de julio de 1950 en el Servicio por Oposición. El 15 de julio de 1955 dejó de prestar servicio efectivamente, por razón de renuncia que le fue aceptada a tener efecto al finalizar un período de vacaciones que la Autoridad lo determinó en 55 días laborables. Le hizo efectiva la renuncia el 23 de septiembre de 1955, a la expiración de los referidos 55 días. Durante este tiempo disfrutó, como es natural, de su sueldo. Según estipulación de hechos de las partes que sirvió de base a la Sala sentenciadora para dictar su fallo, la situación de vacaciones fue la siguiente:

(1) Entre el 18 de julio, fecha en que comenzó a trabajar, y 31 de diciembre de 1950, el demandante acreditó por ley 13½ días de vacaciones, disfrutó de 1½, dejando acumulados 12 días.

(2) En 1951 acreditó 30 días, disfrutó de 1½ quedando un remanente de 28½ días, más los 12 del año anterior para una acumulación total de 40½ días.

(3) En 1952 acreditó 30 días, disfrutó 45, quedando un balance acumulado de 25½ días de vacaciones al finalizar dicho año.

(4) En 1953 acreditó 30 días, disfrutó 9 para un balance acumulado al finalizar el año de 46½ días.

(5) En 1954 acreditó 30 días, disfrutó 24 para un balance acumulado al finalizar el año de 52½ días.

(6) De enero 1ro. al 15 de julio de 1955, fecha ésta en que dejó de prestar servicio efectivamente para entrar en el disfrute de vacaciones finales, acreditó 16 días, disfrutó 5, quedando un remanente de 11 días sin disfrutar, para un balance acumulado total de vacaciones al 15 de julio de 63½ días.

El demandante sostiene que él tenía derecho a disfrutar de esos 63½ días de vacaciones finales con paga y no 55 días como determinó la Autoridad. Quizás sea conveniente decir ahora, porque tiene alguna importancia en relación con el enfoque del problema planteado, que este caso no envuelve el *pago* en efectivo en sustitución del disfrute de tiempo, de vacaciones acumuladas. El problema envuelto es uno por demás sencillo, que envuelve la aplicación administrativa de ciertas disposiciones de la legislación de personal.

En la Sec. 28 de la Ley que creó la Oficina de Personal del Gobierno Estadual de Puerto Rico—Ley Núm. 345 de 12 de mayo de 1947, 3 L.P.R.A. sec. 668— se dispone lo siguiente:

"Todos los empleados en el Servicio por Oposición y en el Servicio sin Oposición excepto los de emergencia, tendrán derecho a licencia y vacaciones a razón de dos días y medio por cada mes de servicio y a licencia por enfermedad a razón de un día y medio por cada mes de servicio, excluyendo en ambos casos los domingos y días de fiesta legal. La autoridad nominadora de acuerdo con los empleados, determinará la fecha en que éstos disfrutarán de sus vacaciones anuales dentro del transcurso de cada año, en la forma que fuere más compatible con las necesidades del servicio; Disponiéndose, que cada empleado tendrá derecho a disfrutar de dichas vacaciones durante un período de no menos de quince (15) días consecutivos.

"Las reglas prescribirán las horas de trabajo, los días feriados, la asistencia y las licencias por vacaciones y enfermedad

y las licencias especiales por causa justificada, con paga o sin paga, según fuere el caso."

La Sec. 7 de dicha Ley Núm. 345 dispuso que la Junta de Personal, .... dictará reglas *que no estén en conflicto con dicha Ley*, para la ejecución de la misma, las cuales una vez aprobadas por el Gobernador, serán promulgadas con fuerza de ley. Se dispuso que las reglas proveerán entre otras cosas. . . la fijación de horas de trabajo, reglamentación de la asistencia, *concesión de licencias* y demás condiciones de trabajo para los empleados del Servicio por Oposición y del Servicio sin Oposición, y que los poderes conferidos al Director de Personal estarán sujetos a las disposiciones de la Ley y a dichas reglas. Esta sección dejó en pie las reglas vigentes de la anterior Comisión de Servicio Civil bajo la Ley Núm. 88 de 1931, hasta la promulgación de las reglas a ser adoptadas.

Las anteriores disposiciones de esta Ley aseguran al empleado público un derecho a vacaciones antes no garantizado, en época en que ya se le reconocía a otros tipos de trabajadores. La legislación sobre el servicio gubernamental en vigor al aprobarse la presente Ley de Personal, que era la Ley Núm. 88 de 11 de mayo de 1931 creadora de la anterior Comisión de Servicio Civil, no concedió a los empleados públicos el derecho a disfrutar de vacaciones. Lo relativo sobre el particular aparece en forma somera en el inciso (11) de la Sec. 10 de esa Ley al definirse los "deberes de la Comisión":— "Disponer la forma de fijar las horas de trabajo, de llevar nota de la asistencia y de pagar los servicios durante horas extraordinarias; disponer también el establecimiento de cursos de enseñanza, *así como la tramitación de licencias anuales*, por enfermedad o especiales, con sueldo o sin él."

La Comisión dispuso en su Regla XXXIX que los jefes de departamentos y demás servicios *podrían* (se les daba permiso) conceder licencias con sueldo, cuando no fuere in-

compatible con las necesidades del servicio. *Podrían* conceder licencia por no más de dos días y medio por cada mes de servicio, domingos y días festivos excluidos. Se dispuso que el empleado *podía* dejar de tomar esa licencia y acumularla, pero no se le concedería licencia por un período mayor de sesenta días en ningún año natural. También estatuía la Regla XXXIX que las licencias *estarían sujetas al arbitrio del funcionario* que estuviese facultado para concederlas y no constituían un *derecho* inherente al empleado, salvo los casos de enfermedad o impedimento físico.

Menciono la legislación anterior porque permite ver con claridad qué fue lo que el Legislador quiso repudiar con la nueva Ley, al concederle al empleado *el derecho* a disfrutar de vacaciones a razón de dos días y medio por cada mes de servicio durante la incumbencia del cargo o empleo, fuera del capricho o arbitrio administrativos, sea jefe nominador o agencia de personal. También porque explica la razón de ser de la cláusula limitativa del disfrute de licencia en un año natural a no más de sesenta días, como una medida de protección al servicio, considerándose que la Regla misma daba potestad al empleado para disfrutar de la licencia o para acumularla.

En 9 de septiembre de 1952 el Gobernador aprobó y se promulgaron Reglas de Personal. Pertinentes a la controversia de este caso son las siguientes disposiciones de la Regla 8 (3 R.&R.P.R. secs. 647-114; –116):

"(4) Licencia de vacaciones

(a) Todos los empleados del Servicio por Oposición y del Servicio sin Oposición, excepto los de emergencia, tendrán derecho a licencia de vacaciones a razón de dos días y medio (2½) por cada mes de servicio, excluyendo los domingos y días feriados. La autoridad nominadora, de acuerdo con los empleados, determinará la fecha en que éstos disfrutarán de sus vacaciones anuales durante el transcurso de cada año, en la forma que fuere más compatible con las necesidades del servicio. Sin embargo, cada empleado tendrá derecho a disfrutar de licencia

de vacaciones durante un período de no menos de quince (15) días consecutivos.

(b) Los empleados que dejen de tomar la licencia de vacaciones concedida por la Ley podrán acumular la misma hasta un máximo de sesenta (60) días laborables al finalizar cualquier año natural.

(c) Las autoridades nominadoras podrán conceder licencia de vacaciones en exceso de treinta (30) días laborables en cualquier año natural a aquellos empleados que tengan licencia acumulada, según lo dispuesto en el inciso anterior. La licencia de vacaciones, sin embargo, no podrá exceder de sesenta (60) días laborables en cualquier año natural."

"(6) Pago por concepto de vacaciones en caso de separación

(a) Todo empleado que se separe del servicio por cualquier causa, excepto muerte, destitución o abandono del servicio, tendrá derecho a recibir paga hasta un máximo de sesenta (60) días laborables, por concepto de la licencia de vacaciones que tenga acumulada bajo las disposiciones de la Ley y de esta división."

La Sec. 28 de la Ley Núm. 345 es clara y específica en cuanto a que fue la intención de la Asamblea Legislativa disponer por ley que los empleados públicos en el Servicio por Oposición y en el Servicio sin Oposición disfrutaran de vacaciones anualmente a razón de dos días y medio por cada mes de servicio o sea 30 días de vacaciones al año, excluyendo domingos y días de fiesta legal. Resulta también claro e inequívoco el mandato del Legislador a la autoridad nominadora para que determine, de acuerdo con los empleados, la fecha en que éstos disfrutarán de esas vacaciones anuales *dentro del transcurso de cada año*, en forma compatible con las necesidades del sirvicio, y fue también claro el mandato del Legislador que los empleados disfruten sus vacaciones anuales usando cuando menos un período de 15 días consecutivos.

La Ley Núm. 345 no asimila o expone de su propia faz el concepto de la acumulación de vacacions por más de un año sin disfrutarse. Hecho significativo éste, porque al Le-

gislador le era familiar el hecho que bajo las reglas vigentes de la Comisión de Servicio Civil que dejó en pie hasta que se adoptaren otras, la situación era diferente.

Le Regla 8 recoge el criterio anterior de una acumulación permisible de vacaciones correspondientes a las de más de un año, sin que tampoco defina el concepto de la acumulación: —"Los empleados *que dejen de tomar* la licencia de vacaciones. . . *podrán acumular.* . ." (Regla 8(4)(b))—no obstante el firme mandato del Legislador en sentido contrario. Sin embargo, no estoy en condiciones de afirmar, ni creo que sea necesario para la decisión de este caso, que tal disposición administrativa es claramente nula o está en abierto conflicto con la Ley por ser contraria a una norma básica de la misma considerando lo dispuesto en la Sec. 7, ante, y asumo, en ausencia de información específica que no la ofrece el récord de este caso ni la he podido obtener de otras fuentes publicadas, que alguna razón hubo al adoptarse la reglamentación 5 años después, basada quizás en la experiencia del pasado o en las necesidades del servicio, permitiendo una acumulación. De todos modos, cualquier duda se resuelve a favor de la reglamentación en lo que a la acumulación de vacaciones por más de un año respecta, si bien no debe olvidarse que el mandato legislativo de la Sec. 28 permanece inalterado y en toda su fuerza y vigor. Lo normal debe ser que el poder nominador asegure al empleado el disfrute de vacaciones dentro de cada año natural. Cualquier acumulación debe ser una excepción justificada por razones del servicio, no la elección del empleado o de la autoridad nominadora o la conveniencia de ambos.

A la luz de todo lo anteriormente dicho, veamos la situación. El inciso (a) del apartado 4 de la Regla 8 sustancialmente reproduce el estatuto. El inciso (b) dispone que los empleados "que dejen de tomar *la licencia*" de vacaciones podrán acumular la misma hasta un máximo de 60 días al finalizar cualquier año natural. No se hace distinción entre

las causas para dejar de tomar la licencia, si por mera elección o conveniencia del empleado o si porque la autoridad nominadora no ha hecho la determinación, o si porque justificadamente o no se ha negado a concederla. Volviendo a la Sec. 28, ésta dispone que las reglas prescribirán las *"licencias"* por vacaciones, y la Sec. 7, que proveerán para la "concesión de licencias". La propia regla se refiere en su texto a que se podrá acumular la "licencia" hasta el máximo que ella fija. Tomando todo esto en conjunto, el inciso (b) aludido no puede tener otro significado e interpretación sino el de limitar a 60 días el período máximo de una *licencia* ordinaria de vacaciones, limitación ésta que puede tener plena justificación por razón de las necesidades del servicio y el buen funcionamiento. Más claro surge y de manera expresa en el inciso (c) que le sigue, complemento del (b). Si interpretáramos dichos incisos en el sentido de que limitan el derecho sustantivo a vacaciones que concede la Ley a un máximo de 60 días al finalizar un año, y que cualquier exceso sobre 60 días de vacaciones acumuladas en ese momento queda anulado o sin efecto, situaríamos estas disposiciones al margen de la esfera de la reglamentación permisible bajo el estatuto.

El inciso (a) del apartado 6 de la Regla 8 —"Pago por Concepto de Vacaciones en Caso de Separación"— incuestionablemente sigue el patrón de los incisos (b) y (c) del apartado 4. Estatuye que el empleado que se separa del servicio... tendrá derecho a *recibir paga* hasta un máximo de 60 días laborables por concepto de la licencia que tenga acumulada bajo las disposiciones de la Ley y de las Reglas. Si esta regla se refiere al pago en efectivo al final del empleo de vacaciones acumuladas, lo cual pudiera entenderse necesario para aligerar la ocupación de un nuevo incumbente, la misma no puede tener otro significado sino el de limitar dicho pago al equivalente de 60 días. Pueden haber razones

justificadas, como por ejemplo problemas de fondos, para la limitación.

Entre la Ley y la reglamentación administrativa se desenvuelven dos conceptos separados: (1) el derecho sustantivo de la vacación concedido al empleado por el Legislador, y (2) el concepto funcional de la *licencia* equivalente en la mecánica del servicio a permiso, autorización o consentimiento oficial para el disfrute de ese derecho sustantivo en determinado momento. Tratarlos como cosas iguales es a mi juicio, un error. Para mí es claro que la Regla constituye un ordenamiento de lo segundo, y no una pretendida invasión de lo primero, cancelando administrativamente todo derecho de vacaciones devengadas por ley en exceso de 60 días.

En tanto se interprete y se aplique la reglamentación administrativa de la manera en que la interpretó y aplicó la Autoridad demandada, esto es, como una limitación permisible del derecho sustantivo de vacaciones con sueldo que la ley manda acreditarle al empleado a razón de dos días y medio por cada mes de servicio durante todo el tiempo que dura una incumbencia, dicha interpretación y aplicación situarían la Regla más allá del ámbito legal de una reglamentación permisible sobre la manera de usar y de disfrutar de tal derecho, ya que impondría una limitación *en la extensión o contenido* del derecho sustantivo mismo según lo concede la Ley.(¹)  Una limitación así no la impuso el propio

---

(¹) Cfr: *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, págs. 274–275; *Roig Commercial Bank* v. *Buscaglia*, 74 D.P.R. 986, pág. 1002; *Lugo* v. *Marini*, 72 D.P.R. 517, pág. 520; *Ex parte Irizarry*, 66 D.P.R. 672, pág. 676; *Buscaglia* v. *Tribunal de Contribuciones*, 67 D.P.R. 57, pág. 64; *Descartes* v. *Tribunal y Sucn. Serrallés*, 71 D.P.R. 471, pág. 477; *Villa* v. *Comisión Industrial*, 65 D.P.R. 562, pág. 568; *Colón* v. *Tugwell*, 65 D.P.R. 924, pág. 927; *Addison* v. *Holly Hill Co.*, 322 U.S. 607, págs. 610 y ss.; *Comm'r* v. *Acker*, 36 U.S. 87, pág. 89; *Teamsters Local* v. *Labor Board*, 365 U.S. 667, pág. 674: *Metlakatla Indians* v. *Egan*, 369 U.S. 45; *F.C.C.* v. *American Broadcasting Co.*, 347 U.S. 284; *Manhattan Co.* v. *Commissioner*, 297 U.S. 129, pág. 134; *Miller* v. *United States*, 294 U.S. 435, pág. 439. Véanse: Wade *Administrative Law*, 1961, *Delegated Legislation*, pág. 257 y ss.; Andrés Serra Rojas, *Derecho Administrativo*, 1961, 2a. ed., *la Facultad*

Legislador a pesar de que conocía el hecho de que la misma existía bajo la anterior Regla XXXIX que entonces era ley. (²) Sin duda se debió a que bajo la nueva política pública adoptada garantizando un derecho a vacaciones los casos de acumulación de ordinario no deben surgir, si se da debido cumplimiento al mandato de la Sec. 28. El récord no nos permite concluir si la situación aquí surgida se debió a la voluntad del demandante como empleado o a que la autoridad nominadora no hizo las determinaciones pertinentes o a que las exigencias del servicio impedían el disfrute anual de todo el tiempo. Cada caso debe resolverse por sus propios hechos, y los hechos de éste no demuestran propósitos contrarios a las normas de la Ley Núm. 345 por parte del empleado. Aunque el presente caso tal vez no ameritaría ser devuelto a los fines que exponemos a continuación en vista de que sólo hubo 3½ días de acumulación en exceso de la Regla, lo menos que debería hacerse en un caso más señalado es determinar si una acumulación excesiva fue producto de la conveniencia del empleado o de una actitud del poder nominador, justificada o no, que impidiera el disfrute a tiempo. Sería una candidez mía creer que el empleado, parte más débil, puede en todo momento hacer prevalecer su derecho a tener una licencia contra la actitud, justificada o no, del jefe nominador sin exponerse a incurrir en sanciones disciplinarias o cargos por abandono del servicio. Aparte de la cuestión legal envuelta, desde el punto de vista de lo razonable sería injusto que a un empleado cuyas vacaciones se le han acumulado sin culpa suya se le aplique entonces una norma administrativa que según fue interpretada por la Autoridad

*Reglamentaria, Moción del Acto Administrativo*, págs. 319–321, 364 y ss.; Kaplan, *The Civil Service Law*, 1958. *Powers of Personnel Agencies*, pág. 104; Carls Kuchman, *California Administrative Law and Procedure*, 1953, págs. 85 y ss.

(²) La facultad que la Ley Núm. 88 de 1931 concedió a la anterior Comisión de Servicio Civil en lo que respecta a vacaciones fue de naturaleza plenamente legislativa, muy distinta a la que concede la Ley Núm. 345 a la Junta de Personal meramente regularizadora.

sobre Hogares le elimina toda vacación acreditada por ley en exceso de 60 días.

La Ley Núm. 12 de 5 de mayo de 1953 y la 84 de 23 de junio de 1958 enmendatoria de aquélla, probablemente sugeridas por la propia agencia de Personal por ser esta materia de su particular incumbencia administrativa, y que cubren situaciones especiales, no demuestran un propósito legislativo de restringir sustantivamente el derecho concedido por la Sec. 28 de la Ley Núm. 345.(³)

Solamente bajo una disposición legislativa en contrario tan específica como la que concedió el derecho, entendería yo que este demandante que acreditó por ley durante su incumbencia en el cargo 149½ días y que disfrutó de 86, según fue estipulado, no tuviera derecho a disfrutar vacaciones por los 63½ días restantes en lugar de 55. Como el sueldo pagado cubrió sólo este período el demandante tiene derecho a que la demandada le satisfaga el sueldo correspondiente al período de 8½ días adicional que él debió haber disfrutado. Cfr. *Rivera* v. *Tribunal de Distrito*, 72 D.P.R. 741, pág. 743; *P. R. Auto Corporation* v. *Tribl. de Distrito*, 73 D.P.R. 337, pág. 340. El fallo de la Sala sentenciadora reconociendo al demandante ese derecho debería ser confirmado.

En otra apelación traída por el demandante, a base de que él tenía derecho a vacaciones a razón de 2½ días durante el período entre el 15 de julio y el 23 de septiembre de 1955, en que disfrutaba vacaciones, también debería ser confirmado el fallo que le negó tal derecho. Un empleado que presenta su renuncia y de hecho deja de trabajar, sólo que aquélla es efectiva al finalizar el disfrute de un período de vacaciones, no sigue prestando servicios en el sentido y para los efectos de la Sec. 28 de la Ley Núm. 345.

---

(³) La Ley Núm. 12 de 1953 se refiere a vacaciones acumuladas durante Servicio Exento, fuera de la Ley de Personal. La enmienda de 1958 se refiere a transferencias de un empleado de una a otra agencia dentro de los tres Servicios, y tampoco se coarta sustantivamente su derecho a vacaciones. Véase: *Diario de Sesiones*, Vol. 2, tomo 2, pág. 903 (1953); Vol. 10, tomo 4, pág. 1973 (1958).