THE CHASE MANHATTAN BANK, N.A., demandante y recurrido, *v.* MUNICIPIO DE SAN JUAN, demandado y recurrente.

*Número:* RE-87-232          *Resuelto:* 29 de junio de 1990

*José A. Menéndez Cortada* de *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada & Lefranc Romero,* abogado del recurrente; *Julio L. Aguirre* y *José J. Álvarez,* de *Fiddler, González & Rodríguez,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El Municipio de San Juan solicita la revisión de una sentencia dictada por el Tribunal Superior que declara con lugar una demanda de reintegro presentada por el Chase Manhattan Bank. El banco cuestiona las patentes recaudadas sobre las comisiones cobradas por la administración de hipotecas de terceros. Revocamos.

I

Los hechos pertinentes a la controversia planteada fueron estipulados por las partes. Luego de agotados los trámites administrativos, el Chase Manhattan Bank, N.A. (en adelante Chase) reclamó judicialmente al Municipio de San Juan un reintegro por el pago en exceso de la patente municipal para el año 1983 en concepto de las comisiones cobradas por el servicio y administración de hipotecas de tercero. El banco alegó que este servicio no constituía un "negocio financiero" según lo define la

Ley Núm. 113 de 10 de julio de 1974 (21 L.P.R.A. sec. 651 *et seq.*) —en adelante Ley de Patentes Municipales— y que no era aplicable la tasa de 1.0% impuesta a las actividades financieras. Por lo tanto, el Chase requirió la devolución de $31,600, más los intereses correspondientes.

El Tribunal Superior declaró con lugar la demanda y ordenó el reintegro solicitado. Dicho foro estimó que "no importa quién sea la institución que preste los servicios de administrar carteras de préstamos hipotecarios de terceros, la tasa contributiva de la patente municipal aplicable es el .30 del 1.0% . . . aplicable a negocios no financieros". Apéndice XIII, pág. A-80. Finalmente, concluyó que "sólo los servicios y transacciones de los bancos comerciales y los otros negocios enumerados en la Sección 2(a)(5) de la Ley, 21 L.P.R.A. [s]ec. 651[a](5), que sean de carácter financiero" están sujetos al pago de una patente de 1.0% sobre el volumen de negocio de la empresa. Íd., pág. A-85.

En su recurso, el Municipio de San Juan plantea que la Ley de Patentes Municipales expresamente incluye como negocio financiero a todos los servicios y transacciones de bancos comerciales, bancos mutualistas o de ahorro. Con este fundamento reclama que todos los ingresos brutos de un banco con parte de su volumen de negocio están sujetos a la tasa de 1.0% aplicable a los negocios financieros. Por la naturaleza e importancia del asunto, revisamos.

II

Recientemente, en *American Express Co. v. Mun. de San Juan*, 120 D.P.R. 337 (1988), en *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692 (1988), y en *Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. 653 (1990), examinamos en su dinámica los poderes conferidos a los municipios por la Asamblea Legislativa para imponer patentes municipales a las industrias o negocios no exentos. Ley de Patentes Municipales, 21 L.P.R.A. secs. 651b y 651c. Concluimos que dicha Ley de Patentes Municipales de 1974 amplió la facultad impositiva de los municipios. Su extenso historial legislativo revela que se eliminó la clasificación de

negocios en grupos específicamente enumerados y se impuso patentes sobre la prestación de servicios, ventas al detal o al por mayor, negocios financieros y a otras empresas no exentas. Al explicar el alcance de la ley a la Cámara de Representantes, el Representante Rivera Ortiz expuso claramente los propósitos de la misma según fueron plasmados en el Informe de la Comisión de Hacienda:

> En el proyecto la patente recae sobre la prestación de servicios, ventas al detal o al por mayor, negocios financieros o cualquier otra industria o negocio. Así la Ley se hace uniforme y se termina la peculiar situación de que la patente recae sobre una actividad económica que varíe de un municipio a otro.
>
> La base sobre la cual se impone la patente sigue siendo el volumen de negocio. El proyecto define en su Sección 2 lo que es volumen de negocio, de acuerdo a los diferentes casos. *El concepto volumen de negocios ha sido adaptado a los cambios habidos al ampliar el número de industrias y negocios sujetos a la patente.* Transcripción de Informe de la Comisión de Hacienda de la Cámara de Representantes de 21 de junio de 1974, pág. 6. Véase, también, Informe de la Comisión de Hacienda de la Cámara de Representantes sobre el P. de la C. 1088 de 20 de junio de 1974.

En efecto, una lectura cuidadosa de la Ley de Patentes Municipales revela claramente que su propósito fue ampliar las actividades comerciales e industriales sujetas a la imposición de patentes. Por ejemplo, mientras anteriormente sólo pagaban los "bancos o casas de banca particulares", 21 L.P.R.A. secs. 641a y 641b, la nueva legislación incluyó tanto a las industrias o negocios que se dedican a ofrecer *servicios y transacciones bancarias*, como a las actividades de "las compañías de financiamiento, compañías de seguro, compañías de inversión, agencias de cobro y de cualquier otra actividad financiera". 21 L.P.R.A. sec. 651a(5).[1] Como vemos, la amplitud de contornos es manifiesta.

---

[1] "El término 'negocio financiero' significa toda industria o negocio consistente *en servicios y transacciones de bancos comerciales*, asociaciones de ahorro y préstamos, bancos mutualistas o de ahorros, compañías de financiamiento, compañías de seguro, compañías de inversión, agencias de cobro y de cualquier otra actividad financiera llevada a cabo por cualquier industria o negocio." (Énfasis suplido.) 21 L.P.R.A. sec. 651a(5).

■ La Ley de Patentes Municipales también incluyó como parte del ingreso bruto para calcular el volumen de negocios de los bancos los "ingresos recibidos" en Puerto Rico de fuentes externas. *Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. 653 (1990). En esa ocasión concluimos que "la autoridad concedida a los municipios para imponer y cobrar patentes e[ra] amplia y no p[odía] dársele una interpretación restrictiva". (Énfasis suprimido.) Íd., pág. 663. El presente recurso también nos permite examinar otra dimensión del concepto "procedencia" de los ingresos recibidos en Puerto Rico.

■ Por otro lado, en *American Express Co. v. Mun. de San Juan*, supra, analizamos la aplicación del estatuto a una empresa financiera y concluimos lo siguiente:

> La ley no limita la aplicación de la patente a las empresas específicamente identificadas. Todo lo contrario, al extender la patente a cualquier otra actividad financiera la Legislatura delegó a los municipios el poder de cobrar este impuesto a empresas destinadas a actividades financieras. También se autorizó a los municipios a cobrar patentes a cualquier otra empresa dedicada a una actividad financiera. Dichas actividades pueden ser iguales a las realizadas por las entidades enumeradas o pueden incluir otra operación de naturaleza financiera.

Con el propósito de simplificar lo más posible la administración de la ley y de evitar controversias sobre la tasa correspondiente, se establecieron dos (2) tipos de patentes aplicables según la naturaleza de la actividad económica. Véase Informe de la Comisión de Hacienda de la Cámara de Representantes sobre el P. de la C. 1088, *supra*. En el caso particular de los negocios financieros, la ley expresamente autoriza a los municipios a imponer una patente de 1.0% sobre una base más estrecha que la aplicable a las otras entidades. 21 L.P.R.A. sec. 651a(a)(6)(B).

■ De lo anterior se desprende que los "servicios y transacciones de bancos comerciales" están expresamente incluidos dentro del término "negocio financiero". Por otro lado, la ley también define en forma abarcadora lo que significa un servicio

como "aquellas operaciones llevadas a cabo por toda industria o negocio de prestación de servicios al usuario". 21 L.P.R.A. sec. 651a(3). La clave de la controversia ante nos es precisamente determinar en qué consisten los *servicios y transacciones* que ofrecen los bancos y las otras instituciones financieras.

## III

Para la respuesta a esta interrogante es necesario que examinemos cuáles son los servicios y transacciones que pueden llevar a cabo los bancos comerciales y las otras instituciones financieras a tenor con la Ley de Bancos, Ley Núm. 55 de 12 de mayo de 1933, según enmendada, 7 L.P.R.A. sec. 111, y las otras leyes pertinentes.

■ Por su importancia económica, los bancos comerciales están estrictamente reglamentados por el Comisionado de Instituciones Financieras, quien tiene amplios poderes de investigación y fiscalización, y otorga licencias anuales a las entidades con la solvencia económica requerida por el estado. 7 L.P.R.A. sec. 159. Esta licencia se concede a las distintas instituciones para que en forma *integral* lleven a cabo diversas operaciones financieras, desde recibir depósitos y hacer préstamos hasta "realizar cualquier otra operación propia de la índole de estas instituciones". 7 L.P.R.A. secs. 111(a)–111(p).

■ Todas las operaciones y transacciones de los bancos comerciales tienen que efectuarse conforme a la legislación bancaria y son parte integral de su negocio financiero. Por lo tanto, los ingresos de todos esos servicios deben ser incluidos en el cómputo del volumen de negocio para propósitos del pago de la patente aplicable a las instituciones financieras.

■ Así específicamente lo dispone la Ley de Patentes Municipales cuando destaca que en el caso particular de los bancos comerciales "el ingreso bruto significará los intereses recibidos o devengados de préstamos, *los cargos por servicios*

*prestados*, las rentas, el beneficio bruto en la venta de propiedades o valores y las ganancias, beneficios e ingresos derivados de cualquier *otra procedencia*". (Énfasis suplido.) 21 L.P.R.A. sec. 651a(a)(6)(B) (4).

De esta manera interpretamos el lenguaje de la ley con un significado que valida el propósito del estatuto y el ánimo del legislador según lo demuestra su extenso historial legislativo. *Rivera Maldonado v. Autoridad Sobre Hogares*, 87 D.P.R. 453 (1963); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772 (1968). Al interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener. *García Comercial v. Srio. de Hacienda*, 80 D.P.R. 765 (1958); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, pág. 245.

■ En este caso la Ley de Patentes Municipales tuvo como propósito ampliar el alcance del poder impositor de los municipios para incluir a toda persona dedicada a un negocio financiero. Ese propósito quedó plasmado en las disposiciones del estatuto al describir lo que constituye un negocio financiero y el método para computar el volumen de negocio en los casos específicos de los bancos.

Examinado este trasfondo doctrinal, réstanos evaluar específicamente el planteamiento del Chase en el sentido de que la actividad de servir y administrar hipotecas no constituye un negocio financiero bajo la Ley de Patentes Municipales, por lo que la patente pagada debió computarse conforme la Sec. 5(b) de la citada ley, 21 L.P.R.A. sec. 651(d), correspondiente a negocios no financieros.

IV

Ante nos el Municipio de San Juan expone que las comisiones cobradas por el Chase en la administración de préstamos hipote-

carios de terceros constituye un cargo por un servicio prestado por el banco como parte de sus operaciones bancarias en Puerto Rico. Del análisis doctrinal anterior se desprende que para poder ofrecer un servicio el Chase tiene que estar autorizado por la Ley de Bancos o estatutos análogos. De lo contrario, su actividad sería contraria a la ley, y la institución estaría sujeta a las penalidades pertinentes.

■ De hecho, el legislador expresamente autorizó a los bancos de Puerto Rico a dedicarse "parcial o totalmente, al negocio de concesión de préstamos hipotecarios para todos los fines, incluyendo para financiar o refinanciar la adquisición de bienes inmuebles, o actuar como corredor de Préstamos Hipotecarios sobre bienes inmuebles . . .". Art. 2 de la Ley de Instituciones Hipotecarias, 7 L.P.R.A. sec. 1052. La Ley de Instituciones Hipotecarias dispone que los bancos pueden llevar a cabo este tipo de actividad financiera sin antes obtener una licencia especial del Comisionado de Instituciones Financieras. Este ordenamiento especial parte de la premisa de que la Ley de Bancos faculta a los bancos comerciales autorizados por el Comisionado a administrar préstamos hipotecarios originados tanto por la misma institución como por terceros.

■ Por su parte, la propia Ley de la Oficina del Comisionado de Instituciones Financieras, 7 L.P.R.A. secs. 2001 *et seq.*, clasifica como una "institución financiera" a cualquier corporación o persona que haga negocios en Puerto Rico y que esté sujeta a la Ley de Bancos o a la Ley de Instituciones Hipotecarias. 7 L.P.R.A. secs. 2004(g)(1) y 2004(g)(5). Bajo cualquiera de los dos (2) esquemas legislativos, la actividad de administrar hipotecas de tercero llevada a cabo por el Chase constituye una transacción bancaria e, ipso jure, un negocio financiero.

Por las razones expuestas anteriormente, *revocamos la sentencia del Tribunal Superior de San Juan y dejamos en vigor la*

*decisión del Municipio de San Juan sobre las patentes aplicables a la controversia revisada.*

El Juez Asociado Señor Negrón García se inhibió.