POWER ELECTRIC COMPANY, demandante y apelante, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y apelado.

*Número:* 12838      *Resuelto:* 12 de junio de 1963

*Alberto Picó* y *F. A. Rosa Silva,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Juan A. Faría, Procurador General Auxiliar,* abogados del apelado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

PER CURIAM: Entre los años 1950 y 1954 la demandante introdujo en Puerto Rico bombillas eléctricas Westinghouse bajo un contrato de agencia con dicha firma, para ser vendidas en toda la Isla a través de subagentes. La Westinghouse enviaba la mercancía a la demandante a consignación, bajo facturas que fijaban un precio de lista, que era el precio en que las bombillas debían venderse finalmente al consumidor. Mensualmente la demandante debía remesar a la Westinghouse el importe de las ventas de bombillas durante el mes anterior, al referido precio ya fijado por Westinghouse, menos 45% que representaba la comisión o beneficio de la demandante. Este 45% nunca fue considerado por el Secretario de Hacienda a los efectos de imponer los arbitrios.

La controversia surgió porque los arbitrios fueron pagados por la demandante durante el período de 1950 a 1954 descontando del precio de *lista* el 45% de su compensación, más un 5% del remanente. El derecho de la demandante a recibir en adición al 45% ese 5% de la diferencia se consignó en la Sec. 7(c) del contrato de agencia entre ella y Westinghouse. Esa Sección disponía que si el agente (la demandante)

enviare (i) todas las declaraciones, informes e inventarios según eran requeridos en el contrato, y (ii) remesare, no más tarde del 15 de cada mes la cantidad adeudada, de acuerdo con la Sec. 6, por concepto de todas las bombillas vendidas por ella y sus agentes durante el mes calendario anterior, *hubiere o no recaudado ya el importe de dichas ventas*, tendría derecho a una cantidad igual al 5% de la cantidad remesada, cuyo 5% se concedía como una compensación especial por dichos prontos informes y remesas.

La Sec. 6 del contrato a que se hace referencia en la cláusula anterior disponía que el agente remesaría a Westinghouse no más tarde del 15 de cada mes el valor total de las ventas al precio de *lista* hechas por el agente y subagentes que hubiere sido recaudado durante el mes calendario anterior, y otras recaudaciones especificadas, menos el 45% de compensación básica y cualquier compensación adicional a que el agente pudiera tener derecho según lo dispuesto en la Sec. 7(b) y (c) ya referidas.

De acuerdo con la Sec. 4 del mismo contrato, la demandante venía obligada a llevar libros y récords de todas las transacciones bajo el mismo y a rendir a Westinghouse el segundo día de cada mes informes sobre inventarios de toda la mercancía consignada y en poder del agente a la terminación del mes calendario anterior, así como los demás informes que fueren requeridos. Venía igualmente obligada la demandante a enviar no más tarde del 15 de cada mes informes cubriendo las ventas de bombillas durante el mes precedente, y todos los que le fueren solicitados.

La Sec. 16 de la Ley de Rentas Internas de 1925 aplicable en este caso imponía a los aparatos eléctricos un arbitrio de 15% sobre el *precio de venta* en Puerto Rico. Precio de venta según la Sec. 4 de la Ley era el *costo en Puerto Rico* del artículo, más 20% sobre dicho costo. El costo en Puerto Rico según la propia Sec. 4 era el costo de los artículos en el *punto de origen* más 10% sobre este costo calculado para fletes y

otros gastos de transportación. Punto de origen según la
Sec. 2 de la Ley era el primer sitio en que se establecía con el
introductor en Puerto Rico una relación contractual de com-
praventa respecto de la mercancía sujeta al impuesto, ya fuera
dicha relación establecida directamente o por mediación de
agentes o representantes, y según la Sec. 6, ese costo en el
punto de origen era el que regía al momento de remitirse la
mercancía al consignatario.

Bajo el contrato de agencia a consignación envuelto en
este caso, el Secretario de Hacienda consideró como costo en
el punto de origen el remanente del precio de *lista* de la
Westinghouse al cual debía venderse la mercancía al consumi-
dor, deducido el 45% de la compensación básica de la deman-
dante. Pero a los efectos de fijar ese costo en el punto de origen,
el Secretario de Hacienda rechazó la deducción adicional del
5% que incluyó la demandante al calcular el arbitrio, por
concepto de la compensación especial bajo la Sec. 7(c)
del contrato, por entender el Secretario que dicho descuento
adicional no era permisible a tenor de lo dispuesto en la Parte
B de la Sec. 4 de la Ley. Esta Parte B disponía de la manera
siguiente: *"Deducciones Admisibles del 'Costo en el Punto de
Origen'.* No será deducible del costo en el 'punto de origen'
ningún descuento de caja o financiero ni ninguna otra deduc-
ción análoga hecha a clientes para inducirlos a hacer efectivas
las facturas dentro de un período determinado. Tampoco
serán deducibles las comisiones a los agentes, a los comisionis-
tas, a los representantes, a los agentes corredores, o a los
agentes embarcadores. En aquellos casos, sin embargo, en que
se conceda un descuento comercial para llevar al precio de
mercado prevaleciente, precios básicos estipulados en listas,
anuncios y publicaciones o cuando el descuento comercial sea
una deducción de un precio al consumidor anunciado en
publicaciones y sea el fin de la deducción la de conceder a los
mayoristas un beneficio basado en un descuento del precio al
consumidor publicado, el Secretario de Hacienda, de tener

amplia evidencia procedente del abastecedor y aportada por el contribuyente, que no deje lugar a duda razonable sobre la verdadera y permanente naturaleza de dichos descuentos, podrá admitir la deducción de tales descuentos del costo en el punto de origen. *Disponiéndose, sin embargo*, que en ningún momento será deducible ningún descuento que sea otorgado en razón de volúmenes progresivos de venta o por otras consideraciones de carácter especulativo, siendo la firme intención legislativa la de que la imposición contributiva se haga sobre la realidad de precios prevalecientes en el mercado, no influídos por factores especulativos *como los descuentos para inducir pronto pago*, para inducir a un mayor volumen de compras, y recursos análogos."

La Sala sentenciadora fue de opinión que la anterior disposición, Sec. 4B de la Ley en la cual se basó el Secretario de Hacienda no era el derecho aplicable. Entendió que era el inciso (c) de la Sec. 4A. Ésta disponía que cuando los artículos sujetos al pago de arbitrios, por el hecho de haber sido introducidos en Puerto Rico por entidades exentas, o por cualquier otro motivo, no hubieran sido objeto de tributación, y en uno y otro caso dichos artículos fueran subsiguientemente vendidos a personas no exentas del pago de arbitrios, el "costo en Puerto Rico" significaría el precio que por ellos hubiera pagado el comprador al adquirirlos; y de no mediar venta, el "costo en Puerto Rico" sería estimado por el Secretario de Hacienda.

La apelante sostiene ante nos, no sin razón, que este inciso (c) no es aplicable a su caso, y arguye que si la Sala sentenciadora entendió que tampoco era aplicable la parte B de la Sec. 4, debió haber declarado con lugar la demanda. Convenimos en que los fundamentos del fallo de la Sala sentenciadora no fueron correctos, pero creemos que el fallo en sí lo fue.

Si no en detalles precisos, el descuento adicional del 5% a tenor de la Sec. 7(c) del contrato está sustancialmente dentro de la prohibición contenida en la disposición anterior-

mente transcrita. Debe observarse que bajo las Secs. 4 y 6 del contrato, la demandante venía obligada a rendir sus informes y a hacer sus remesas en la fecha indicada de las recaudaciones de las ventas del mes anterior sin derecho a descuento adicional alguno. El descuento adicional se le concedía sólo en aquellos casos en que enviara a Westinghouse el 15 de cada mes el importe de todo lo vendido, *hubiera la demandante o no recaudado ya dicho importe*. Claramente éste era un descuento para inducir un pronto pago, aun de lo que ella no había recibido.

La demandante sostiene que ella no era un *cliente* de Westinghouse. La palabra "cliente" usada en dicha disposición de la Ley no tiene un significado restrictivo ni técnico, sino uno general. Aun cuando el contrato de la demandante fuera el de un agente consignatario, en el espíritu de esa disposición ella podía considerarse como un cliente, y lo era.

*Aunque por otros fundamentos, se confirmará la sentencia que desestimó la demanda de devolución de arbitrios.*