Roque González & Co., Inc., demandante y recurrente, *v.* Secretario de Hacienda, demandado y recurrido.

*Número:* R-85-238        *Resuelto:* 31 de enero de 1991

*Roberto B. Suárez* y *Pedro J. Polanco*, de *Fiddler, González & Rodríguez*, abogados de la recurrente; *Carmen A. Bravo* de *Riefkohl, Produradora General Auxiliar*, abogada de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La demandante recurrente Roque González & Co., Inc. (en adelante R.G.) —la cual es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y que se dedica a la venta de zapatos, carteras y artículos relacionados al público en general— recurre de una sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan,(1) que declaró sin lugar una demanda que radicara ante dicho foro judicial contra el Secretario de Hacienda de Puerto Rico (Secretario de Hacienda) *en solicitud de reintegro de arbitrios* pagados con motivo de una deficiencia que el Departamento de Hacienda (Hacienda) le notificara en el año de 1978 en relación con embarques de zapatos que R.G. le comprara a la corporación Mitsubishi International Corp. (Mitsubishi) —con oficinas principales en la ciudad de

---

(1) Hon. Wilfredo Alicea López, Juez Superior.

Nueva York, estado de Nueva York, Estados Unidos de América—mercancía que Mitsubishi, a su vez, compraba de suplidores en la República de China y que estos últimos enviaban directamente a Puerto Rico desde dicha república.

La deficiencia notificada por Hacienda —ascendente a la suma de $12,301.43— surgió por razón de que Mitsubishi, la cual corporación fue la que originalmente pagó los arbitrios sobre la mercancía al Departamento de Hacienda a través de un representante llamado Air Mar Shipping, Inc., *utilizó como base para el cómputo de los arbitrios el precio que sus suplidores en la República de China le habían facturado por dichos artículos.* Hacienda por el contrario, al notificar la deficiencia en controversia a R.G., *utilizó como base para dicho cómputo el precio que Mitsubishi le facturó a R.G. por el calzado,* el cual, naturalmente era uno mayor.

I

El caso fue sometido ante el tribunal de instancia a base de una estipulación de hechos. De la misma surge, en síntesis y en lo pertinente, que la demandante recurrente R.G. es una corporación doméstica que se dedica, en general, a la venta al detal de calzado y artículos relacionados por medio de tiendas conocidas como Almacenes González. Un representante de la Mitsubishi visitaba a la demandante con el propósito de venderle calzado que Mitsubishi adquiría de fabricantes en la República de China. Acordado precio y cantidad entre R.G. y Mitsubishi, el representante de esta última enviaba las órdenes a las oficinas de Mitsubishi en la ciudad de Nueva York, donde dichas órdenes eran procesadas. Mitsubishi, entonces, le ordenaba a sus suplidores en la República de China que enviaran el calzado, vía transportación marítima (Sea Land), *directamente* a Puerto Rico, *siendo el propio Mitsubishi el consignatario del mismo.* Un representante de Mitsubishi, la Air Mar, pagaba todos los derechos y arbitrios a Hacienda a base del precio consignado en las facturas originales de los suplidores a Mitsubishi, luego de lo cual se autorizaba a Sea

Land a entregar el calzado a R.G. Hasta el mismo instante en que Sea Land era autorizada por Air Mar, en representación de Mitsubishi, a entregarle el calzado a R.G., todos los riesgos y gastos relacionados con el calzado eran sufragados por Mitsubishi.

Notificada la deficiencia a R.G. por Hacienda, y celebrada la correspondiente vista administrativa, Hacienda se reafirmó en la misma. R.G. *pagó* a Hacienda la mencionada deficiencia, solicitándole luego el *reintegro* de ésta. Denegada su solicitud por Hacienda, R.G. radicó la demanda antes mencionada en solicitud de reintegro. Procede que se señale que en dicha demanda, R.G., a pesar de que alegó que había "*sufrido el peso del pago* de los impuestos, recargos, intereses y multas notificados por el codemandado Secretario de Hacienda *sin haber pasado parte alguna de dicho peso* a persona alguna", no alegó que ella era el "contribuyente designado" por la ley; *por el contrario,* de las alegaciones contenidas en la demanda radicada se desprende que R.G. sostiene que el contribuyente designado por ley lo es Mitsubishi, a quien incluyó como codemandada en la acción que radicara, y que dicha corporación era la que venía en la obligación de pagar dichos arbitrios en la eventualidad de que el tribunal resolviera que la posición del Secretario de Hacienda era la jurídicamente procedente; esto es, que procedía el cómputo del arbitrio a base del precio que Mitsubishi le facturaba a R.G. por el calzado.(2)

Expresando que la controversia se limitaba a resolver cuál era la base correcta para determinar el pago del arbitrio, y entendiendo que en ese aspecto le asistía la razón al Secretario de Hacienda, el tribunal de instancia declaró *sin lugar* la demanda radicada. En el recurso de revisión que ante este Tribunal radicara, R.G. le imputa al foro de instancia la supuesta comisión de tres errores, a saber:

---

(2) La causa de acción radicada por la recurrente, Roque González & Co., Inc. (R.G.) contra Mitsubishi fue desestimada mediante sentencia parcial emitida por el foro de instancia de fecha 6 de junio de 1980. Dicha sentencia no fue objeto de revisión judicial alguna por ninguna de las partes.

*PRIMER ERROR*: Erró el Tribunal Superior al no entrar a determinar quién era el "contribuyente", y la parte responsable por la alegada deficiencia en el caso, y al no determinar que Mitsubishi era el "contribuyente" y la parte realmente responsable del pago de la alegada deficiencia.

*SEGUNDO ERROR*: Erró el Tribunal Superior al determinar que la base para determinar el pago de los impuestos era el precio facturado por Mitsubishi a la demandante-recurrente.

*TERCER ERROR*: Erró el Tribunal Superior al determinar implícitamente que Mitsubishi no hacía negocios en Puerto Rico y al negarse a aplicar la ley por temor a un supuesto contubernio entre Mitsubishi y la demandante-recurrente. Solicitud de revisión, pág. 11.

Expedimos el auto de revisión radicado mediante Resolución a esos efectos de fecha 20 de junio de 1985. Resolvemos.

## II

Para la fecha en que Hacienda le notifica la alegada deficiencia contributiva a la recurrente R.G.,[3] eran dos los mecanismos procesales que nuestro ordenamiento jurídico le proveía al contribuyente que, notificado por Hacienda de una deficiencia contributiva, interesaba cuestionar, y litigar, la referida deficiencia. El primero de ellos lo encontramos en las disposiciones de la sec. 261 del Título 13 de L.P.R.A., la cual dispone:

*Sec. 261. Reintegro administrativo o crédito por contribuciones; apelación contra denegatoria*

*Cuando algún contribuyente creyere que ha pagado o que le ha sido cobrada ilegal o indebidamente, o en exceso de la cantidad*

---

[3] La Ley Núm. 5 de 8 de octubre de 1987, conocida como la "Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987" (13 L.P.R.A. sec. 7001 *et seq.*), derogó la "Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico", 13 L.P.R.A. ant. sec. 4001 *et seq.* Así, en su Sec. 11.002 dispone:

"Todo procedimiento, acción o reclamación pendiente ante el Departamento de Hacienda o ante cualquier tribunal, a la fecha de aprobación de esta ley [Octubre 8, 1987], y que se haya iniciado conforme a las disposiciones de la Ley Núm. 2 de 20 de enero de 1956, según enmendada [secs. 4001 a 4103 de este título], *se continuará tramitando hasta que recaiga una determinación final de acuerdo con las leyes y reglamentos en vigor a la fecha en que tales procedimientos, acciones o reclamaciones se hayan presentado o iniciado.*" (Énfasis suplido.) 13 L.P.R.A. sec. 7001n.

*debida, una contribución de cualquier clase,* excepto las contribuciones sobre ingresos impuestas por la Ley de Contribuciones sobre Ingresos de 1954, Subtítulo 9 de este título, cuyos créditos o reintegros están autorizados por dicha Ley, *podrá solicitar del Secretario de Hacienda de Puerto Rico, por escrito y exponiendo los fundamentos que tuviere para ello, el crédito o reintegro de la misma; Disponiéndose, que no se concederá crédito o reintegro alguno de contribuciones cubiertas por las secs. 261 y 262 de este título . . . a menos que el contribuyente demuestre a satisfacción del Secretario de Hacienda que ha sufrido el peso del pago de la contribución;* . . . .

. . . *Si la solicitud fuere denegada total o parcialmente por el Secretario de Hacienda, éste lo notificará así por correo certificado al contribuyente, y el contribuyente podrá recurrir contra dicha denegatoria ante el Tribunal Superior de Puerto Rico, radicando demanda en la forma prescrita por ley dentro del término de treinta (30) días a partir de la fecha del depósito en el correo de la notificación del Secretario de Hacienda denegando la solicitud;* Disponiéndose, que la no radicación de la demanda dentro del término aquí provisto privará al Tribunal Superior de Puerto Rico de facultad para conocer del asunto. No se considerará por el Tribunal Superior de Puerto Rico recurso alguno para el crédito o reintegro de cualquier contribución cubierta por las secs. 261 y 262 de este título hasta que exista una denegatoria por el Secretario de Hacienda de tal crédito o reintegro notificada según se provee anteriormente; *Disponiéndose, que tan sólo podrá recurrir ante el Tribunal Superior de Puerto Rico contra una denegatoria de crédito o reintegro de cualquier contribución cubierta por las secs. 261 y 262 de este título, la persona que haya sufrido el peso del pago de la contribución en discusión; y una alegación en tal sentido y la prueba de la misma en su oportunidad serán consideradas requisitos sin el cumplimiento de los cuales el Tribunal Superior de Puerto Rico no tendrá facultad para fallar el asunto.* (Énfasis suplido.)

Por otro lado, dispone la sec. 286 del Título 13 de L.P.R.A., *en lo pertinente,* que:

*Sec. 286. Procedimientos para casos contributivos ante el Tribunal Superior—Demanda y contestación*

Todas las acciones, recursos o procedimientos que deban sustanciarse ante el Tribunal Superior, *bajo la sec. 121(a)2 del*

*Título 4,* se iniciarán *mediante demanda* de la persona o entidad recurrente, formulada en nombre propio o por medio de representante legal debidamente autorizado, *dentro del término de treinta (30) días siguientes a la fecha de la notificación que a la misma haga el Secretario de Hacienda, en cualquiera de los siguientes casos:* (1) contribuciones sobre propiedad mueble o inmueble; (2) contribuciones sobre herencias o donaciones; (3) contribuciones sobre ingresos; (4) contribuciones sobre enriquecimiento injusto; (5) contribución de seguro social; (6) denegatorias de reintegros autorizados por ley, de cualquier clase de contribución pagada indebidamente o en exceso o cobrada ilegalmente por cualquier otra causa; *Disponiéndose, sin embargo, que la radicación de la demanda ante el Tribunal Superior no afectará ni menoscabará el derecho del Secretario de Hacienda a hacer efectiva la contribución por los procedimientos autorizados por ley, a menos que el Tribunal Superior, a solicitud del contribuyente y con citación del Secretario de Hacienda, suspenda el cobro de la contribución en litigio, mediante el afianzamiento, a su entera satisfacción, de la contribución en controversia, incluyendo intereses y penalidades.* La autorización para prestar esta fianza, así como la fijación de su cuantía, *serán facultad discrecional y exclusiva del Tribunal,* teniendo en cuenta, en cada caso, *los hechos y circunstancias* que a su juicio concurran y afecten el interés, tanto del contribuyente, como del Estado Libre Asociado de Puerto Rico.(4) (Énfasis suplido.)

■ Como podemos notar, las diferencias entre ambos procedimientos —*los cuales están vigentes en la actualidad*—(5) son

---

(4) Dispone la mencionada sec. 121(a)2 del Título 4 de L.P.R.A. que:

"El Tribunal Superior conocerá de los siguientes asuntos:

"(a) En lo civil:

"(2) De todo caso, acción, procedimiento o recurso extraordinario *relacionado con, o que afecte, la imposición, cobro y pago de toda clase de contribuciones incluyendo* contribuciones sobre la propiedad, contribuciones sobre herencia y donaciones, contribuciones sobre ingresos, contribuciones sobre enriquecimiento injusto, contribuciones de seguro social, *arbitrios,* licencias y cualesquiera otras contribuciones o impuestos, así como de las reclamaciones de contribuciones cobradas por un procedimiento ilegal, o que voluntariamente o sin notificación del Secretario de Hacienda se hubieran pagado indebidamente o en exceso, cuyo reintegro esté autorizado por ley y haya sido rehusado por el Secretario de Hacienda." (Énfasis suplido.)

(5) Las Sec. 7.001 y 7.002 de la Ley Núm. 5 de 8 de octubre de 1987 (13 L.P.R.A. secs. 7301 y 7302), conocida como la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987, "corresponden" a las disposiciones de la antes transcrita sec. 261 del Título 13 de

obvias. Aquel contribuyente que, notificado con una deficiencia por Hacienda, no interese que continúen aumentando las partidas por intereses y demás recargos, puede pagar la deficiencia notificada y, entonces, solicitar de Hacienda el reintegro de la misma. De Hacienda ratificar su criterio, dicho contribuyente puede *recurrir en revisión* de dicha decisión denegatoria al Tribunal Superior de Puerto Rico al amparo de las disposiciones de la transcrita sec. 261.

El contribuyente que no desee, o no pueda, pagar la deficiencia señalada por Hacienda puede "impugnar" o cuestionar la misma, bajo las disposiciones de la antes parcialmente transcrita sec. 286, radicando una demanda ante el Tribunal Superior de Puerto Rico contra el Secretario de Hacienda. Es de notar que en esta situación —a menos que el tribunal, en el uso de su discreción, disponga que el contribuyente puede prestar una fianza en garantía de lo alegadamente adeudado por él al fisco— la radicación de la demanda no impide que Hacienda cobre la deuda contributiva por las vías procesales civiles que la ley le provee. No hay duda que la discreción del tribunal en este respecto dependerá de si entiende que la demanda radicada por el contribuyente es una frívola o, por el contrario, es una meritoria.

Procede enfatizar el hecho que nuestra jurisprudencia señala que para que una "persona" *pueda exitosamente solicitar,* al amparo de la transcrita sec. 261 del Título 13 de L.P.R.A., *el reintegro de arbitrios* que le ha satisfecho a Hacienda, ésta tiene que cumplir con *dos (2) requisitos,* a saber: (1) que es el

L.P.R.A., esto es, al Art. 1 de la Ley Núm. 232 de 10 de mayo de 1949. La mencionada sec. 7.001 (13 L.P.R.A. sec. 7301) establece, en lo pertinente, que las disposiciones de la antes transcrita sec. 261 "serán utilizadas supletoriamente en los procedimientos de reclamación de reintegros establecidos en este subtítulo".

Por otro lado, la antes transcrita sec. 286 del Título 13 de L.P.R.A. —la cual entró en vigor al aprobarse la Ley Núm. 328 de 13 de mayo de 1949— *no* aparece derogada *expresamente* por ley fiscal alguna aprobada con posterioridad a 1949. *Resulta procedente señalar, sin embargo, que la disposición equivalente de dicha sec. 286 en la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987, ante, lo es la Sec. 7.005 de dicha Ley, 13 L.P.R.A. sec. 7305.* En relación con esta última disposición debe examinarse, adicionalmente, las disposiciones de 13 L.P.R.A. sec. 7318.

Debe señalarse que la Legislatura, mediante la Ley Núm. 18 de 30 de noviembre de 1990, enmendó la *Ley Núm. 170* de 12 de agosto de 1988 con el propósito de eximir de la aplicación de la Ley Núm. 170 las decisiones del Secretario de Hacienda.

"contribuyente" designado por la ley y (2) que debe haber sufrido el peso del pago de la contribución, no habiéndole pasado o transferido la misma a otra persona. *Standard Comm. Tob. Co. v. Tribl. Contrib.*, 71 D.P.R. 749, 753 (1950); *Pedro A. Pizá, Inc. v. Tribl. Contribuciones y Tes.*, 72 D.P.R. 320, 323 (1951); *Baring Industries v. Srio. de Hacienda*, 101 D.P.R. 835, 839 (1973).(6)

Lo anteriormente señalado plantea *la interrogante* de si procede la desestimación, de plano, de la solicitud de reintegro que hiciera el recurrente R.G., por cuanto, conforme las disposiciones del Art. 60 de la entonces vigente Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico de 1956, según enmendada, 13 L.P.R.A. sec. 4060, el contribuyente designado por ley lo era Mitsubishi, y no la recurrente R.G., por razón de que Mitsubishi era el "consignatario" de la mercancía en controversia.(7) De hecho, y como expresáramos anteriormente, la propia

---

(6) En los primeros casos, esto es, en *Standard Comm. Tob. Co. v. Tribl. Contrib.*, 71 D.P.R. 749 (1950), y en *Pedro A. Pizá, Inc. v. Tribl. Contribuciones y Tes.*, 72 D.P.R. 320, 323 (1951), dicha norma se estableció bajo la antigua Sec. 4 de la Ley Núm. 169 de 1943, la cual disponía que:

"Cuando se trate de un requerimiento de pago por el Tesorero en virtud de cualquier arbitrio o contribución de licencia establecidos por las Leyes de Rentas Internas de Puerto Rico . . . se podrá acudir en apelación ante dicho Tribunal [el de Contribuciones] *solamente por la persona o entidad que realmente haya sufrido el peso de pagar el arbitrio o contribución,* y una alegación en tal sentido y la prueba de la misma en su oportunidad, serán considerados como requisitos jurisdiccionales." (Énfasis suplido.)

En el caso de *Standard Comm. Tob. Co. v. Tribl. Contrib.*, ante, a la pág. 753, el Tribunal *específicamente resolvió* que aun cuando la disposición de ley hablaba de "persona", la misma no es otra que el "contribuyente" designado como tal por ley.

Dicha doctrina —*ya bajo las disposiciones de la todavía hoy vigente sec. 261 del Título 13 de L.P.R.A.*— fue *específicamente ratificada* por el Tribunal en el citado caso de *Baring Industries v. Srio. de Hacienda*, ante. Citando con aprobación lo resuelto en *Standard Comm. Tob. Co. v. Tribl. Contrib.*, ante, pág. 839, expresamos que "aun cuando la Legislatura usó las palabras persona o entidad *necesariamente se refería al contribuyente y no a cualquier persona . . .*".

(7) En lo pertinente, disponía la citada sec. 4060 que:
"*Sec. 4060. Objetos y artículos tributables por las secs. 4010 y 4013*

"En el caso de objetos y artículos sujetos a los impuestos y derechos establecidos en las secs. 4010 y 4013 de este título, la responsabilidad contributiva y el tiempo para el pago de impuesto y derechos se regirán por las siguientes reglas:

"(a) *Introducciones Directas.* En el caso de artículos introducidos en Puerto Rico en cualquier forma:

"(1) *Contribuyente* El contribuyente será, excepto según se provee en el apartado (d) [personas exentas] de esta sección:

"(a) *si el artículo viene consignado directamente a un consignatario—el consignatario;*

corporación recurrente R.G. sostiene —tanto en la acción que radicara a nivel de instancia como en el recurso de revisión que radicara ante este Tribunal— que dicha Corporación no es el "contribuyente designado por la ley". Véase *Baring Industries v. Srio. de Hacienda*, ante, pág. 838.

*Contestamos la antes mencionada interrogante en la negativa.* Somos del criterio que la situación que plantea el presente caso es una *sui generis* que amerita que se trate la misma como *una excepción a la norma jurisprudencial* que se estableciera en los citados casos de *Standard Comm. Tob. Co. v. Tribl. Contrib.*, de *Pedro A. Pizá, Inc. v. Tribl. Contribuciones y Tes.*, y de *Baring Industries v. Srio. de Hacienda*; en específico, en cuanto al primero de los dos (2) requisitos, esto es, que la solicitud de reintegro únicamente puede ser realizada por el *contribuyente* designado por ley.

La diferencia existente —la cual, a nuestro juicio, amerita la excepción— entre los tres antes citados casos y el presente estriba en que en aquéllos el pago de los arbitrios se hizo al Estado por una persona o entidad sin que mediara señalamiento o requerimiento de clase alguna por parte del Tesoro o de Hacienda. En el presente caso, por el contrario, Hacienda le *notifica directamente* a la parte demandante recurrente una deficiencia, señalándolo específicamente como *el responsable jurídicamente* del pago de una contribución. Un análisis de la situación fáctica de dichos casos y la del caso que ocupa nuestra atención nos permite la comprensión del porqué de la excepción que decretamos en el día de hoy. Nos explicamos.

---

"(b) si el artículo se remite a la orden del embarcador o a un intermediario, o si el consignatario es indefinido—la persona que reclame el artículo. Si no se ha tomado posesión del artículo dentro de treinta (30) días a partir de la fecha de introducción, el contribuyente será el remitente;

"(c) si el artículo es introducido por una persona procedente del exterior—el viajero o el miembro de la tripulación que introduzca el artículo." (Énfasis suplido.)

Conforme las disposiciones de la Sec. 6.001 de la Ley Núm. 5 de 8 de octubre de 1987 (13 L.P.R.A. sec. 7251), conocida como la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987, la "persona responsable" del pago de arbitrios sobre artículos que sean introducidos del exterior será, entre otros, el consignatario del mismo, "si el artículo viene consignado directamente a un consignatario"; *en otras palabras, la situación, respecto a este punto sigue siendo la misma.*

En *Standard Comm. Tob. Co. v. Tribl. Contrib.*, ante, la demandante (Standard) había adquirido el "título" sobre unos sellos de rentas internas que había comprado anteriormente al Tesoro un fabricante de cigarrillos con el propósito de adherirlos a los mismos, los cuales luego advinieron inservibles. Denegado por el Tesorero el reintegro del costo de los sellos, Standard acudió al foro judicial. Como expresáramos anteriormente, este Tribunal resolvió que, aun cuando la ley hablaba de "persona" respecto a la solicitud de reintegro, el mismo únicamente puede ser solicitado por el "contribuyente", el cual era el comprador original de los sellos. En el caso de *Pedro A. Pizá, Inc. v. Tribl. Contribuciones y Tes.*, ante, un vendedor de autos (Pizá) le vendió dos vehículos de motor —sobre los cuales ya había pagado los arbitrios— a una corporación (Ochoa Fertilizer) que estaba exenta del pago de dichos arbitrios. Solicitado el reintegro de los mismos por Ochoa Fertilizer, el Tesorero lo denegó. Este Tribunal resolvió que no procediá la solicitud de reintegro por cuanto Ochoa Fertilizer, aun cuando sufrió el peso del pago del arbitrio, no era el "contribuyente", y Pizá, aun cuando era el "contribuyente", había transferido a Ochoa el peso del pago de la contribución. En *Baring Industries v. Srio de Hacienda,* ante, un fabricante de equipo de lavandería del Estado de la Florida (Baring) envió a Puerto Rico una "planchadora comercial", pagando esta misma Corporación el arbitrio usual para esta clase de equipo aun cuando el consignatario del mismo lo era el Hotel El Conquistador. Denegado el reintegro, y luego de los trámites administrativos y judiciales a nivel de instancia, este Tribunal resolvió que Baring no tenía derecho al reintegro por razón de que, a pesar de haber sufrido dicha corporación el peso del pago de la contribución, la misma no era el "contribuyente" designado por ley, siendo éste el consignatario del equipo, esto es, el Hotel El Conquistador.

Como expresáramos anteriormente, en el presente caso Hacienda le notifica a R.G. una deficiencia contributiva a pesar de que está consciente del hecho de que dicha corporación, conforme la ley, no es el "contribuyente" designado por la propia ley ya que no fue el "consignatario" del calzado.

Ello, a nuestro juicio, nos obliga a exceptuar a R.G. de la norma jurisprudencial antes mencionada, reconociéndole el derecho (*standing*) *a solicitar* el reintegro a pesar de que técnicamente no es el "contribuyente" designado por ley.[8] La aplicación de dicha norma al presente caso resultaría, a nuestro juicio, en una situación intolerable desde el punto de vista de la justicia ya que, de un lado, se señala a R.G., por Hacienda, como la entidad jurídicamente responsable del pago de una deficiencia y, de la otra parte, se le estaría negando el derecho a éste a impugnar dicha actuación.

¿Significa lo anteriormente expresado que procede, sin más, declarar con lugar la solicitud de reintegro que radicara R.G. en el presente caso? Entendemos que no; veamos por qué.

### III

El Art. 55 de la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, 13 L.P.R.A. ant. sec. 4055 —vigente para la fecha en que llegó la mercancía a Puerto Rico y a la fecha de la notificación de la deficiencia— disponía, en lo pertinente, que:

*Sec. 4055. Determinación de precios y costos*

Las siguientes definiciones y reglas serán aplicables al determinar los precios y costos para los fines de este Subtítulo:

(a) Precio Contributivo en Puerto Rico.—*El precio contributivo en Puerto Rico se determinará como sigue*:

(1) Regla General. *"Precio contributivo en Puerto Rico" significará el "costo en Puerto Rico" más veinte (20) por ciento sobre dicho costo, excluyendo los artículos sujetos al inciso (20) subsiguiente*:

(2) Determinación por el Secretario. En el caso de cualguier artículo

(a) en relación con el cual, a juicio del Secretario los documentos necesarios para establecer el "costo en Puerto Rico" no

---

[8] Debe mantenerse presente que R.G. cumple con el segundo de los requisitos; esto es, R.G. efectivamente sufrió el peso del pago de la contribución, no habiéndolo transferido a persona o entidad alguna.

son auténticos, o sean insuficientes, o inadecuados para tal propósito;

(b) en relación con el cual el "costo en Puerto Rico", a base de los documentos sometidos por el contribuyente para establecer dicho costo, difiere, a juicio del Secretario, considerablemente del costo en Puerto Rico para artículos similares; o

(c) en relación con el cual no se prescriba en este Subtítulo regla alguna para determinar el "costo en Puerto Rico";
el Secretario, entonces, determinará el "precio contributivo en Puerto Rico", conforme al método que, a su juicio, refleje propiamente aquel precio contributivo consecuente con las normas de este subtítulo.

(b) Costo en Puerto Rico. *El "costo en Puerto Rico" se determinará como sigue:*

(1) *Importadores. En el caso de un importador, el costo en Puerto Rico será el costo en fábrica más diez (10) por ciento sobre dicho costo (como una concesión promedio para gastos de transportación, seguro, etc.)."*

. . . . . . . . .

(c) Costo en Fábrica. *El costo en fábrica se determinará de la siguiente manera:*

(1) Regla General. *El "costo de fábrica" será el costo prevaleciente para dicho artículo en el "punto de origen" al tiempo en que el remitente envía el artículo con destino al consignatario, banco u otro intermediario en Puerto Rico,* según se desprenda dicho costo de las facturas comerciales auténticas y adecuadas, originalmente remitidas comprendiendo dicho artículo. No obstante lo anterior, en el caso de automóviles nuevos, el "costo en fábrica" será el precio f.o.b. fábrica cotizado por el fabricante de dichos automóviles a sus distribuidores en Puerto Rico.

. . . . . . . . .

(5) Punto de Origen. El "punto de origen" será el primer *sitio desde donde se mueva el artículo o mercancía para el consignatario o receptor en Puerto Rico, obedeciendo orden expresa e implícita de dicho consignatario o receptor.* Cuando se trate de artículos remesados como donación, regalo o contribución filantrópica, si la

remesa es finalmente aceptada, el "punto de origen" será el sitio donde el donante compró o adquirió el artículo.

. . . . . . . .

(f) Determinación por el Secretario. Cuando a juicio del Secretario, los documentos sometidos por el contribuyente no constituyan prueba fehaciente del valor o precio de los artículos tributados, o cuando dichos documentos no sean auténticos, o fueren insuficientes o inadecuados, el Secretario determinará el precio o valor de dichos artículos conforme al método que a su juicio mejor lo refleje de acuerdo con las normas de este Subtítulo. (Énfasis suplido.)

■ Como podemos notar, para poder arribar o computar el "precio contributivo en Puerto Rico", de un artículo en particular, lo *primero* que hay que determinar es cuál fue el "costo de fábrica" del mismo, *el cual llana y sencillamente lo es el precio del artículo en el "punto de origen"*; esto es, "el primer sitio desde donde se mueva el artículo o mercancía para el consignatario . . . en Puerto Rico, obedeciendo orden expresa e implícita de dicho consignatario o receptor".[9]

Alega la recurrente R.G. que "el primer sitio" desde donde se movió el calzado hacia el consignatario (Mitsubishi) en Puerto Rico, obedeciendo orden a esos efectos de Mitsubishi, fue la República de China. Sostiene la recurrente R.G. que el "costo en fábrica" de dicho calzado, en consecuencia, fue el precio facturado por los suplidores de Mitsubishi a la misma, por lo que el monto del arbitrio originalmente calculado por Hacienda a base de ese precio es el correcto, y no, el posteriormente calculado a base del precio facturado por Mitsubishi a la recurrente R.G.

---

[9] Procede que *se enfatice* que, conforme las disposiciones de la Sec. 1.002 de la Ley Núm. 5 de 8 de octubre de 1987 (13 L.P.R.A. sec. 7002), conocida como la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987, *el término "costo en Puerto Rico"*, en cuanto a la importación de artículos sujetos al pago de arbitrios, *"deberá interpretarse* por el Secretario de Hacienda *en forma análoga* a la definición existente en la Ley Núm. 2 del 20 de enero de 1956" (énfasis suplido); *esto es, conforme disponía la antes transcrita sec. 4055(b) y (c) de la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico. Ello significa que la definición brindada por la citada Ley Núm. 2 de 1956 sobre "punto de origen" continúa hoy vigente.*

No hay duda que una lectura *literal* del inciso (5) de la sec. 4055(c), ante, puede llevar a dicha conclusión. La misma, sin embargo, no es correcta. Debemos tener presente que las oficinas principales de Mitsubishi están localizadas en la ciudad de Nueva York. De ordinario, la mercancía que compra dicha corporación a través del mundo entero iría de su lugar de origen a sus almacenes en Nueva York para entonces de allí ser enviada a sus clientes. Ello significaría el incurrir en gastos innecesarios para dicha corporación por cuanto implicaría, entre otros, el pagar por la transportacíon —por ejemplo— de la República de China a Nueva York, desembarcar la mercancía del medio de transporte utilizado, transportarla a sus almacenes y de allí, al ser vendida, nuevamente tendría que incurrir en los mismos gastos. El mundo moderno comercial no funciona de esa manera. Mitsubishi, al igual que otros proveedores de mercancía y con el obvio propósito de evitar gastos innecesarios, mantiene la mercancía que ha comprado para revender en manos de sus fabricantes-suplidores hasta que efectivamente la vende. Entonces, le ordena al suplidor que la envíe directamente al comprador. Aun cuando no hay duda que fue de la República de China desde donde se movió *físicamente* a Puerto Rico la mercancía en controversia, desde un *punto de vista jurídico* —y por ficción de ley— el "punto de origen" de la misma lo fue Nueva York.

En resumen, el lenguaje del transcrito inciso (5) de la citada sec. 4055(c) *no puede ser interpretado literalmente*. Siendo el "punto de origen" de la mercancía en controversia la ciudad de Nueva York, por razón de ser éste el lugar donde están localizadas las oficinas principales de Mitsubishi, el precio en el "punto de origen" a ser utilizado como "costo de fábrica" a los fines de calcular el "precio contributivo en Puerto Rico" lo es el que le facturara Mitsubishi desde Nueva York a R.G. *Dicha interpretación no es sólo jurídicamente correcta, sino que es la que refleja la realidad de la transacción llevada a efecto por las partes.* Debe recordarse que si bien es cierto que las leyes fiscales deben ser interpretadas restrictivamente, las mismas *tienen que ser interpretadas en forma jurídica y razonable,* teniendo en mente el

propósito e intención general del legislador al aprobarlas. En el caso de leyes fiscales, este es el de recaudar fondos para poder llevar a efecto la obra pública, *Figueroa F. Gautier v. Domenech, Tes.*, 53 D.P.R. 875, 879 (1938); *Licorería Trigo, Inc. v. Srio. de Hacienda*, 94 D.P.R. 270, 279 (1967).

Por otro lado —y como fundamento totalmente separado e independiente de la cuestión sobre cuál era "el punto de origen" del calzado en controversia— tenemos que las disposiciones de la entonces vigente sec. 4055(a)(2)(a), (b) y (c), del Título 13 de L.P.R.A. facultaban al Secretario de Hacienda para determinar, a su juicio, el "costo contributivo en Puerto Rico" de un artículo *cuando, entre otros, los documentos sometidos por el contribuyente no fueran suficientes para poder determinar dicho costo o cuando el costo informado difiere del costo de otros artículos similares.* De hecho, la Sec. 1.002(14) de la *vigente* Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987 (13 L.P.R.A. sec. 7002(14)), le concede una facultad similar, o mayor, al Secretario de Hacienda en esta clase de situaciones.[10]

No abrigamos duda, en consecuencia, que la actuación de Hacienda al computar el arbitrio a ser pagado en relación con el calzado en controversia a base del precio que le facturara Mitsubishi a R.G. por el mismo es una correcta en derecho.

## IV

Nos resta por considerar, y contestar, la interrogante de si la acción de Hacienda de cobrarle a la recurrente R.G. los arbitrios que dejó de satisfacerle Mitsubishi al Estado cuando la mercancía

---

[10] Dispone la citada sec. 7002(14) de la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico, que:

"(14) 'Precio contributivo en Puerto Rico' significará el costo en Puerto Rico más veinte (20) por ciento sobre dicho costo. *No obstante, el Secretario podrá determinar el precio contributivo en Puerto Rico de acuerdo al método que refleje el valor o precio de los artículos tributados, cuando entiende que los documentos necesarios para establecer el costo en Puerto Rico no son auténticos, o que son insuficientes o inadecuados para tal propósito; o cuando a base de los documentos que le someta el contribuyente para establecer el costo en Puerto Rico, éste difiera considerablemente del costo en Puerto Rico para artículos similares; o cuando no se prescriba en este subtítulo regla alguna para determinar el costo en Puerto Rico de los artículos.*" (Énfasis suplido.)

(el calzado) llegó a Puerto Rico es una válida y procedente en derecho. Contestamos en la afirmativa.

Disponía el Art. 74 de la hoy derogada "Ley de Impuestos sobre Artículos de Uso y de Consumo de Puerto Rico", 13 L.P.R.A. ant. sec. 4074 —vigente para la fecha de la notificación de la deficiencia en controversia— que:

> Cualquier persona que *posea* un *artículo tributable* sobre el cual *no* se haya pagado el impuesto prescrito por este Subtítulo, *vendrá obligado* a pagar dicho impuesto *tan pronto adquiera* el artículo tributable en Puerto Rico. (Énfasis suplido.)[11]

Ello a nuestro entender significa —y así lo resolvemos— que al consumarse la transacción de compra y venta llevada a cabo entre Mitsubishi y la recurrente R.G., esto es, al entrar esta última en posesión de la mercancía que le había comprado a Mitsubishi, *sobre R.G. recayó la obligación legal* —por mandato expreso de las disposiciones del transcrito Art. 74 de la Ley de Impuestos del Estado Libre Asociado— *de satisfacerle a Hacienda el impuesto correcto prescrito por la ley para dicha mercancía*; teniendo facultad Hacienda, *inclusive,* para "embargar y vender en pública subasta las propiedades de cualquier persona [en este caso, las de R.G.] que no haya pagado los impuesto, o penalidades fijadas" por la ley. 13 L.P.R.A. sec. 4077(d);[12] *no* importando el hecho de que ese poseedor sea un "tercero inocente". Así *expresamente* lo establecimos y resolvimos en *Figueroa Cancel v. E.L.A.,* 114 D.P.R. 684, 685 (1983).

Por los fundamentos antes expresados, *procede dictar sentencia confirmatoria de la emitida en el presente caso por el Tribunal Superior de Puerto Rico, Sala de San Juan.*

---

[11]  Un examen de las disposiciones de la nueva Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987 revela que dicha ley *no* contiene una disposición legal con lenguaje igual o similar al del antes transcrito Art. 74 de la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, 13 L.P.R.A. ant. sec. 4074.

[12]  La disposición legal equivalente de la hoy derogada sec. 4077(d) del Título 13 de L.P.R.A. en la nueva Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987 lo es la sec. 7351(5) del citado Título 13 de L.P.R.A.

El Juez Asociado Señor Hernández Denton emitió opinión disidente, a la cual se une el Juez Asociado Señor Alonso Alonso. El Juez Asociado Señor Negrón García se inhibió.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une el Juez Asociado Señor Alonso Alonso.

Por entender que la interpretación del Tribunal sobre la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico (en adelante Ley de Impuestos), 13 L.P.R.A. ant. sec. 4001 *et seq.*,[1] es contraria al lenguaje y al espíritu del estatuto, disentimos.

Aunque la decisión del Tribunal permitirá al Estado aumentar sus recaudos por concepto de arbitrios, también tendrá el efecto de incrementar sustancialmente los precios de artículos de consumo importados, agravando la inflación que afecta al país. Consciente de las consecuencias nocivas de esta decisión sobre el consumidor puertorriqueño y en vista de que la interpretación es incompatible con los términos claros y precisos de la ley, suscribimos este disenso.

---

[1] Esta ley fue derogada por la Ley Núm. 5 de 8 de octubre de 1987, "Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987" (en adelante Ley de Arbitrios), 13 L.P.R.A. sec. 7001 *et seq.* Sin embargo, por haber surgido la presente causa de acción en el 1978, mientras aún estaba vigente la antigua Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico (Ley de Impuestos), 13 L.P.R.A. ant. sec. 4001 *et seq.*, y por haberse iniciado la reclamación conforme a las disposiciones de aquélla, dicha ley aplica al presente caso. La Sec. 11.002 de la vigente Ley de Arbitrios, 13 L.P.R.A. sec. 7001n., dispone que:

"Todo procedimiento, acción o reclamación pendiente ante el Departamento de Hacienda o ante cualquier tribunal, a la fecha de aprobación de esta ley, [Octubre 8, 1987] y que se haya iniciado conforme a las disposiciones de la Ley Núm. 2 de 20 de enero de 1956, según enmendada, [secs. 4001 a 4103 de este título] *se continuará tramitando hasta que recaiga una determinación final de acuerdo con las leyes y reglamentos en vigor a la fecha en que tales procedimientos, acciones o reclamaciones se hayan presentado o iniciado.*" (Énfasis nuestro.)

# I

Roque González & Co., Inc. (en adelante Roque González)[2] recurre ante nos de una sentencia del Tribunal Superior que declaró sin lugar una demanda que solicitaba el reintegro de arbitrios pagados para satisfacer una deficiencia notificada por el Departamento de Hacienda (en adelante Hacienda). La determinación de la agencia estaba relacionada con un calzado importado que Roque González adquirió directamente de Mitsubishi International Corp. (en adelante Mitsubishi), quien fue el *consignatario* de la mercancía fabricada en la República de China.[3]

Aunque Mitsubishi pagó todos los costos de transportación, desembarque y costos de entrada, incluyendo los arbitrios, tres (3) años después Hacienda requirió que Roque González pagara por la deficiencia en impuestos. También determinó que los arbitrios debían computarse a base del precio de venta a Roque González y no del costo de fábrica en China.

Roque González argumenta que el contribuyente responsable por la alegada deficiencia es Mitsubishi, el consignatario de la mercancía, y no ellos, quienes adquirieron el título sobre la misma después que fue importada a Puerto Rico. Por otro lado, sostiene que Hacienda debió calcular los arbitrios a base del costo de fábrica en China y no recurriendo a una ficción jurídica para utilizar el precio de venta a Roque González. Aduce, además, que el foro de instancia se equivocó al concluir que Mitsubishi no hacía negocios en Puerto Rico.

Por primera vez, desde que esta ley fue aprobada en el 1956, este Tribunal se enfrenta a una controversia como la de autos. Nos toca resolver quién es el contribuyente responsable del pago de los arbitrios de un producto importado a Puerto Rico y cuál es el fundamento contributivo del producto.

---

[2] Roque González & Co., Inc. es una corporación puertorriqueña dedicada a la compra y venta de calzado, carteras y de artículos análogos.

[3] Mitsubishi International Corp. (en adelante Mitsubishi) es una corporación foránea organizada bajo las leyes del estado de Nueva York y con oficinas principales en la ciudad de Nueva York.

Al amparo de una norma *sui generis* de "interpretación . . . que es la que refleja la realidad de la transacción" —(énfasis suprimido) opinión mayoritaria, pág. 855 — la opinión suscrita por el Tribunal descarta las doctrinas básicas de hermenéutica judicial en derecho tributario y por *fiat judicial* enmienda los artículos en controversia para confirmar la actuación de Hacienda. Aunque reconocemos los esfuerzos desplegados por Hacienda para ampliar el fundamento contributivo y aumentar los tributos, desde este estrado apelativo no podemos enmendar las leyes fiscales para atender las necesidades legítimas del Estado. Corresponde constitucionalmente a la Asamblea Legislativa la responsabilidad de aprobar las enmiendas que se requieran para atemperar el estatuto tributario a las nuevas realidades del comercio internacional.

## II

Al evaluar la controversia de autos presumimos que Roque González sufrió el peso del pago de la contribución en discusión, 13 L.P.R.A. sec. 261,(4) y por ende tiene legitimación activa para reclamar el reintegro.

También, partimos de la premisa que es principio rector de los cánones de hermenéutica que el texto claro y sin ambigüedades de la ley es la expresión por excelencia de la intención del legislador. Dispone nuestro Código Civil que, "[c]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil

---

(4) La jurisprudencia ha interpretado que sólo el contribuyente designado por la ley que haya sufrido el peso del pago de la contribución podrá reclamar el reintegro de los arbitrios ilegal o indebidamente cobrados. *Standard Comm. Tob. Co. v. Tribl. Contrib.*, 71 D.P.R. 749, 753 (1950); *Pedro A. Pizá, Inc. v. Tribl. Contribuciones y Tes.*, 72 D.P.R. 320, 323 (1951); *Baring Industries v. Srio. de Hacienda*, 101 D.P.R. 835, 839 (1973). Estos casos son distinguibles del de autos porque en ellos las personas que reclamaron el reintegro de arbitrios no los habían pagado o habían pasado el peso del arbitrio a un tercero. En el presente caso, fue el propio Secretario de Hacienda el que exigió a Roque González el pago de unos arbitrios que no habían sido pagados ni cobrados a Mitsubishi anteriormente. No podemos validar que el Secretario de Hacienda exija indebidamente el pago de unos arbitrios a un alegado contribuyente deudor y luego se niegue a devolverlos porque esa persona no era el contribuyente designado por ley.

de Puerto Rico, 31 L.P.R.A. sec. 14. Véanse, también: *Irizarry v. Registrador,* 61 D.P.R. 74 (1942); *Piñán Vda. Fajardo v. Srio. de Hacienda,* 83 D.P.R. 314, 316 (1961); *Robert Vizcarrondo v. Srio. de Hacienda,* 114 D.P.R. 566, 573 esc. 11 (1983); *Díaz v. Srio. de Hacienda,* 114 D.P.R. 865 (1983); *Cruz Fontánez v. Registrador,* 126 D.P.R. 182 (1990).

Es preciso recordar y reafirmar lo que expresáramos en *Clínica Juliá v. Srio. de Hacienda,* 76 D.P.R. 509, 521 (1954):

> El juez es un intérprete, y no un creador. Su facultad de interpretación adquiere relevancia cuando del estatuto surgen varios significados probables que suministren un margen adecuado para selección judicial, pero si el lenguaje es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa.

En materia tributaria, donde prevalece la norma de la interpretación restrictiva de la ley, no nos corresponde enmendar jurisprudencialmente las deficiencias de las leyes que limiten los impuestos cobrados. Hacerlo implicaría usurpar el poder otorgado a la Cámara de Representantes y al Senado de Puerto Rico en la Sec. 17 del Art. III de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1. Véase *The Texas Company v. Domenech, Tes.,* 50 D.P.R. 432, 451 (1936). Nuestra función es interpretar las leyes y no juzgar su subiduría. Es por eso que esta Curia debe evitar ceder a la tentación de enmendar estos estatutos contributivos para rectificar los problemas causados por los cambios en las transacciones comerciales. Véanse: *Famania v. Corp. Azucarera de P.R.,* 113 D.P.R. 654 (1982); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico,* San Juan, Pubs. J.T.S., 1987, págs. 243 y 269. Esta es un área de gran complejidad, que no es susceptible de adjudicar mediante conocimiento judicial. Por la naturaleza del asunto, es aconsejable que sean los otros poderes públicos los que hagan los estudios correspondientes y escuchen a todos los intereses afectados antes de aprobar legislación que pueda tener un efecto adverso sobre la economía.

III

En el derecho tributario, dos eventos contributivos se producen a lo largo del proceso de compra y venta de productos importados: cuando la mercancía *entra físicamente* o es introducida a Puerto Rico desde un puerto extranjero y cuando se *consuma la compraventa* en el país. El primer evento da lugar a los *arbitrios,* que se cobran sobre el costo de fábrica de producto y la obligación contributiva surge tan pronto la embarcación atraca al muelle en Puerto Rico para descargar el cargamento. *Texas Co. (P.R.) Inc. v. Tribl. de Contribuciones,* 82 D.P.R. 134 (1961). El segundo evento da lugar a la *contribución sobre los ingresos o ganancias* que obtiene el vendedor de esa mercancía en Puerto Rico. El arbitrio no se cobra por la venta, sino por la introducción. Véase *Pyramid Products v. Buscaglia, Tes.,* 64 D.P.R. 828, 840–841 (1945).

En vista de esta dicotomía, en el pasado hemos concluido que "[l]os arbitrios provistos en nuestra Ley de Rentas Internas nada tienen que ver con las ganancias, las cuales se tributan mediante una forma diferente de contribución —la contribución sobre ingresos". *Puerto Rico Ilustrado v. Buscaglia, Tes.,* 64 D.P.R. 914, 953 esc. 44 (1945).

Además, en *Power Electric Co. v. Srio. de Hacienda,* 88 D.P.R. 553 (1963), resolvimos que las ganancias que tiene una compañía al *vender* en Puerto Rico productos importados están sujetas a contribuciones sobre ingresos y no al pago de arbitrios. La Power Electric (Power) se dedicaba a introducir en Puerto Rico bombillas eléctricas de la compañía manufacturera Westinghouse y venderlas a través de distribuidores. Westinghouse enviaba las bombillas a Power a consignación con facturas que fijaban un *precio de lista, que era el precio al cual las bombillas se venderían al consumidor.* Power remesaba a Westinghouse el importe de las ventas al precio de lista *menos 45% que representaba la comisión o beneficio de Power. Este 45% nunca fue considerado por el Secretario de Hacienda a los efectos de imponer los arbitrios.* Hacienda consideró como *base tributable*

del arbitrio únicamente "el remanente del precio de lista de la Westinghouse al cual debía venderse la mercancía al consumidor, *deducido el 45% de la compensación básica" de Power.* (Énfasis en el original suprimido y énfasis suplido.) Íd., pág. 556. Es decir, el tributo fue impuesto sobre el precio del producto al momento de su adquisición por el fabricante.

## IV

La persona responsable del pago de los arbitrios sobre una mercancía introducida en Puerto Rico,[5] es *el consignatario.* Así lo reconoce el estatuto al disponer que el contribuyente será el consignatario si el artículo "viene consignado directamente" a él. Art. 60 de la Ley Núm. 2 de 20 de enero de 1956 (13 L.P.R.A. sec. 4060). En *Baring Industries v. Srio. de Hacienda,* 101 D.P.R. 835 (1973), avalamos esta interpretación y determinamos que el contribuyente es aquella persona o entidad jurídica a quien se le consigna un artículo directamente.

Una vez identificado quién es el contribuyente, deben calcularse los arbitrios que pagará por la mercancía. La ley dispone que el cómputo de los arbitrios se hará a base del *"precio contributivo"* de los productos en Puerto Rico. Este precio contributivo se calcula a base del *"costo de fábrica"* del producto importado en Puerto Rico[6] y no del *precio de venta en Puerto*

---

(5) "INTRODUCCIÓN" significa la *llegada a los muelles* de los artículos consignados a la isla que son descargados sobre los muelles. Art. 4 de la Ley Núm. 2 de 20 de enero de 1956 (13 L.P.R.A. sec. 4004).

(6) "Fábrica" es el "[e]stablecimiento dotado de la maquinaria, herramienta e instalaciones necesarias para la fabricación de ciertos objetos, obtención de determinados productos o transformación industrial de una fuente de energía". *Diccionario de la Lengua Española,* 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, pág. 625. Para el *Diccionario de Uso del Español,* "fábrica" significa un "[e]dificio con las instalaciones adecuadas para hacer un producto industrial". M. Moliner, *Diccionario de Uso del Español,* Madrid, Ed. Gredos, 1977, pág. 1269.

En este caso la decisión del Tribunal resultaría en una interpretación de los términos "fábrica" y "fabricante" que rebasa los límites del sentido común, del significado ordinario de estas palabras y de la propia definición del legislador. No podemos arrancar de estas palabras el significado que se les pretende atribuir. Si el legislador hubiera querido que "fábrica" y "fabricante" incluyeran las operaciones de cualquier importador o distribuidor, así lo hubiera expresado. Claramente, no contempló como fabricante a un distribuidor de zapatos que se encarga de importarlos a Puerto Rico "[sin hacerlos] objeto de una

*Rico.* De hecho, el proyecto de ley inicial contenía las palabras "precio de venta en Puerto Rico" y fue enmendado precisamente para eliminar ese término y sustituirlo por "precio contributivo en Puerto Rico".

Cuando el remitente envía el artículo con destino al consignatario, el *"costo de fábrica"* se determina a base del costo prevaleciente para el artículo en el *"punto de origen"* (la fábrica).[7] Por lo tanto, el factor determinante para computar el costo contributivo en Puerto Rico de un producto es el precio original de fábrica.

En la Sec. 2 de la Ley de Rentas Internas de 1925, según adicionada por la Ley Núm. 138 de 28 de abril de 1949, se definía punto de origen como el primer sitio en que se establecía con el importador en Puerto Rico una *relación contractual de compraventa* respecto de la mercancía sujeta al impuesto, ya fuera dicha relación establecida directamente o por mediación de agentes o representantes. Sin embargo, esta sección fue enmendada y cambiada de forma radical y la ley ahora define el "punto de origen" como "el primer sitio desde donde se mueve el artículo para el consignatario o receptor en Puerto Rico . . .". Art. 55(c)(5) de la Ley Núm. 2, *supra,* 13 L.P.R.A. sec. 4005(c)(5). El legislador al enmendar esta ley utilizó un lenguaje aún más claro y revelador sobre su propósito legislativo[8] de alterar la ley anterior.[9]

Una rápida lectura de la Ley Núm. 2, *supra,* demuestra que el legislador utilizó el punto de origen como un concepto geográfico

presentación especial o distinta a como los obtuvieron". Art. 4(1)(b) de la Ley Núm. 2, *supra,* 13 L.P.R.A. sec. 4004(1)(b). Un negocio de distribución no es una *fábrica,* sino sólo un negocio de distribución.

[7] El costo en el punto de origen será el que indiquen las facturas comerciales auténticas y adecuadas originalmente remitidas. Art. 55(c)(1) de la Ley Núm. 2, *supra,* 13 L.P.R.A. sec. 4055(c)(1).

[8] Si la Asamblea Legislativa hubiera querido que "punto de origen" no fuera sólo "el primer sitio desde donde se mueva el artículo o mercancía para el consignatario o receptor en Puerto Rico" (13 L.P.R.A. sec. 4055(c)(5)), sino también el lugar de contratación, así lo hubiera dicho, pues es a ésta a quien corresponde la tarea de definir los términos. Es necesario que cuando el legislador usa una palabra para significar algo totalmente diferente a la acepción común y ordinaria de ésta, así lo defina. *Bacardi Corporation v. Tribl. de Contribuciones,* 75 D.P.R. 131, 137 (1953). Así lo hizo en este caso.

[9] "[E]l mero hecho de que la Asamblea Legislativa apruebe una enmienda es de por sí indicativo de la intención, por regla general, de alterar la ley preexistente." *Descartes, Tes. v. Tribl. Contrib. y Sucn. Serrallés,* 71 D.P.R. 471, 478, 479 (1950).

para describir el primer sitio desde donde se elabora y se remite la mercancía para el *consignatario* en Puerto Rico. Art. 55(c)(5) de la Ley Núm. 2, *supra.* Los vocablos "fábrica" y "origen" deben leerse en conjunto, interpretando que la "fábrica" es el lugar donde se originan los artículos. Por ende, el costo en la *fábrica,* según facturado al consignatario, es el que debe considerarse para computar los arbitrios.

Con este trasfondo doctrinal, examinemos las cuestiones en controversia.

## V

El historial procesal del caso revela que durante los años 1975 y 1976 Roque González y Mitsubishi efectuaron las transacciones comerciales que dieron lugar a la decisión contributiva impugnada. Éstas se perfeccionaron a través de un representante de Mitsubishi que visitaba a Roque González periódicamente para enseñarle muestras de calzado, negociar precios y tomar las órdenes. Todo el negocio se hizo en Puerto Rico, excepto que la orden fue procesada en Nueva York; allí Mitsubishi ordenó que desde China la enviaran directamente a Puerto Rico. La mercancía se embarcó desde la República de China a Puerto Rico mediante un conocimiento de embarque a la orden de Mitsubishi. Una vez llegó al muelle, Air Mar Shipping Inc. (Air Mar), a nombre de Mitsubishi, presentó los documentos de embarque y pagó todos los costos, incluyendo arbitrios y cargos por demora. Durante todo este proceso, el título y control sobre los artículos y el riesgo relacionado con los mismos era de Mitsubishi. Posteriormente, y luego de completados los documentos de ley, Roque González recogía los artículos sin ulterior trámite.

De la relación anterior se desprende que Mitsubishi fue el *consignatario* del producto y, al amparo de la ley, era el contribuyente responsable del pago de los arbitrios. Precisamente por eso pagó los arbitrios al momento de recibir sus embarques en 1975 y 1976. La opinión del Tribunal acepta que conforme a las disposiciones del Art. 60 de la entonces vigente Ley de Impuestos,

según enmendada, *supra*, Mitsubishi era el "consignatario" de la mercancía en controversia. Por lo tanto, Mitsubishi era *el contribuyente designado por ley*. El tribunal de instancia, en sus determinaciones de hecho, también reconoce que Hacienda emitió facturas de rentas internas indicando en las mismas que "Mitsubishi era quien pagaba los arbitrios" y que en los documentos de embarque aparecía como consignatario.

En estas circunstancias, debió concluir que Mitsubishi era el contribuyente de acuerdo con la ley y que Roque González era un mero comprador de Mitsubishi que se dedica a vender zapatos y productos análogos al consumidor puertorriqueño.

Roque González no intervino en forma alguna en la introducción a Puerto Rico del calzado ni en el pago de los derechos de aduana, arbitrios y cargos similares. Roque González compró de buena fe el calzado a Mitsubishi una vez fue introducido en Puerto Rico y los arbitrios habían sido pagados por el consignatario. En realidad Roque González efectuó sus compras igual que cualquier otro comprador en plaza.

Examinadas cuidadosamente las transacciones envueltas, según realmente ocurrieron, procedía entonces ordenar a Hacienda que reintegrara a Roque González los arbitrios indebidamente cobrados.[10]

Sin embargo, Hacienda expone que Mitsubishi no era el contribuyente porque esta firma no existía en Puerto Rico, y que la mercancía fue "reclamada" por Roque González. Por lo tanto, sostiene que Roque González es el contribuyente de acuerdo al Art. 60(a)(1)(b) de la Ley Núm. 2, *supra*, 13 L.P.R.A. sec. 4060(a)(1)(b). Este señalamiento ignora que según esa disposición el concepto "contribuyente" incluye al que reclame la mercancía *sólo si el consignatario es indefinido*.

---

[10] En sentencia parcial emitida el 6 de junio de 1980, el tribunal de instancia eliminó a Mitsubishi como codemandada. Sorprendentemente, ninguna de las partes en este litigio solicitó que dicha determinación fuera revisada por esta Curia. Como expondremos más adelante, el tribunal de instancia procedió incorrectamente al determinar que se adeudaban los arbitrios. En segundo lugar, erró al concluir que Roque González respondía del pago de los mismos. Tampoco Mitsubishi adeudaba nada al Secretario de Hacienda, pues su base contributiva estaba correctamente calculada.

Pero, aunque Roque González respondiera por los arbitrios, al adquirir una mercancía gravada procede el reintegro, pues los impuestos tampoco eran adeudados por Mitsubishi. Art. 74 de la Ley Núm. 2, *supra,* 13 L.P.R.A. sec. 4074. Veamos.

Al computar los arbitrios, el foro de instancia concluyó que Nueva York era el punto de origen, pues allí se "genera toda la operación que culmina en que los artículos sean enviados a Puerto Rico directamente por los suplidores". Apéndice K, pág. 125. Partiendo de este resultado, el tribunal *a quo* opinó que el precio al cual Mitsubishi vendió la mercancía a Roque González sería el "costo de fábrica". La opinión del Tribunal acoge esa posición, fundamentada en una ficción jurídica creada para favorecer al Estado. Ni la ley, ni las relaciones contractuales existentes ni la prueba, apoyan esta conclusión.

Un análisis de las transacciones comerciales que originan la controversia de autos revela que, por instrucciones de Mitsubishi, *el primer sitio desde donde realmente se movió físicamente la mercancía para el consignatario, Mitsubishi, fue la República de China.* En vista de los términos tan claros del estatuto, no podemos concluir que el primer sitio desde donde se mueve la mercancía es el lugar donde se procesa la orden. Tampoco podemos concluir que hubo una transferencia jurídica en Nueva York y que ese lugar será el punto de origen al computar el costo de fábrica.[11]

Por lo tanto, erró también el tribunal de instancia al concluir que la base correcta para calcular los arbitrios es el precio de venta al cual el introductor vende sus productos en Puerto Rico. En el caso de *Power Electric Co. v. Srio. de Hacienda,* supra, la Westinghouse era, al igual que los suplidores de China, en este caso el fabricante, y Power, como Mitsubishi, era introductor de la mercancía en Puerto Rico. Los subagentes de Power eran compradores de la mercancía para revenderla, igual que Roque

---

[11] A pesar de que matemáticamente ya Mitsubishi sabía el precio al cual iba a revender la mercancía en Puerto Rico, antes de que esta tocara nuestro puerto, esto se relaciona con otro evento tributable: la compraventa de la mercancía que genera una ganancia y está sujeta al pago de contribuciones sobre ingresos.

González. Asumiendo que Power vendía la mercancía en Puerto Rico a un 100%, de esto tenía que devolver a la Westinghouse un 55%, que era lo que ésta le facturaba como fabricante. El restante 45% era su ganancia en la venta de la mercancía y no estaba sujeto al pago de arbitrios. Éstos no se calculan a base del precio de venta en Puerto Rico, sino del costo de fábrica. Por lo tanto, al igual que Power, Mitsubishi no adeudaba dichos arbitrios.

Como resultado de la decisión del Tribunal, Hacienda ahora podrá incluir las ganancias del importador al calcular la base tributable de los arbitrios y sobre esta cifra computar el precio contributivo en Puerto Rico, añadiendo el 30% sobre dicho precio de fábrica. El efecto multiplicador de esta decisión sobre la estructura de precios de artículos de consumo será devastador. Desde este estrado apelativo hemos enmendado la legislación de arbitrios para encarecer los artículos de consumo y aumentar la carga de los consumidores puertorriqueños con el propósito de ayudar al Estado a recaudar impuestos. Por entender que no es nuestra función recaudar impuestos ni que tampoco debemos legislar, disiento.